Filed 3/21/13  In re Isabel C. CA2/2

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| In re ISABEL C., et al., Persons Coming Under the Juvenile Court Law. | B243985 |
| | (Los Angeles County Super. Ct. No. CK82199) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | |
| Plaintiff and Respondent, | |
| v. | |
| MELANIE V., et al., | |
| Defendants and Appellants. | |

APPEALS from an order of the Superior Court of Los Angeles County.  Sherri Sobel, Juvenile Court Referee.  Affirmed.

Janette Freeman Cochran, under appointment by the Court of Appeal, for Defendant and Appellant Melanie V.

Suzanne Davidson, under appointment by the Court of Appeal, for Defendant and Appellant Raymundo C.

John F. Krattli, County Counsel, James M. Owens, Assistant County Counsel, and Peter Ferrera, Senior Deputy County Counsel for Respondent.

Appellants Melanie V. (mother) and Raymundo C. (father) appeal from the juvenile court's order terminating their parental rights over their children, Isabel (born January 2008) and Raymond (born May 2010). Both parents contend the order must be reversed because the juvenile court abused its discretion by denying their respective Welfare and Institutions Code section 388[1] petitions requesting that the children be returned to their care, or in mother's case, that additional reunification services be offered to the family. Mother further contends the order must be reversed because the parental exception to terminating parental rights set forth in section 366.26, subdivision (c)(1)(B)(i) applies.

The juvenile court did not abuse its discretion by denying mother's and father's respective section 388 petitions. Neither parent sustained the burden of establishing a change in circumstance or that granting their requests was in the children's best interest. Substantial evidence supports the juvenile court's determination that the parental exception to terminating parental rights did not apply. We therefore affirm the order.

## BACKGROUND

**Detention and section 300 petition**

In May 2010, the Los Angeles Department of Children and Family Services (the Department) received a referral indicating that mother and newborn Raymond had both tested positive for methamphetamine. Raymond was in the hospital's intensive care unit and was displaying withdrawal symptoms.

According to the hospital social worker, mother admitted using methamphetamine for the past 17 years, including the day she gave birth to Raymond. Mother also admitted suffering from bipolar disorder but was no longer seeing a psychiatrist for treatment.

Mother told the Department's social worker that she had two children in addition to Raymond -- two-year-old Isabel and 13-year-old Helena.[2] Helena's maternal uncle

---

[1]     All further statutory references are to the Welfare and Institutions Code.

[2]     Helena was not a subject of the juvenile court proceedings in this case.

had been the child's legal guardian for approximately 10 years. Isabel was currently being cared for by a maternal cousin. Mother identified father as the biological father of both Isabel and Raymond and said he was currently incarcerated for possession of controlled substances.

Mother admitted to a long history of methamphetamine use and said she began using methamphetamine at age 15. She reported completing six to nine months of an in-patient drug treatment program in 2000. She denied using drugs before giving birth to Raymond.

The Department filed a section 300 petition on behalf of Raymond and Isabel on May 11, 2010, alleging the children were at risk as the result of Raymond's prenatal exposure to drugs, mother's 17-year history of substance abuse, and father's failure to provide and incarceration for possession of a controlled substance.

At the detention hearing held on May 11, 2010, the juvenile court ordered the children detained and accorded monitored visits to both parents.

**Jurisdiction/disposition**

In May 2010, the Department reported that Raymond and Isabel were both placed with a maternal cousin. In an interview with the Department social worker, mother admitted to a long-standing problem with substance abuse and acknowledged that her drug use impaired her ability to parent the children. In a separate interview, father admitted using methamphetamine before his present incarceration. He also admitted using drugs with mother.

At the May 28, 2010 pretrial hearing, the juvenile court found father to be Isabel's presumed father and Raymond's biological father. The court accepted father's no-contest plea, found both children at risk because of father's history of methamphetamine use and failure to provide, and sustained the portion of an amended section 300 petition pertaining to father.

Mother waived her trial rights and submitted to the petition at a hearing held on June 29, 2010. The juvenile court sustained the allegations relating to mother, finding the

children to be at risk as the result of mother's 17-year history of substance abuse, current methamphetamine use, and Raymond's positive toxicology screen and drug withdrawal symptoms. The court noted that mother appeared to be under the influence during the hearing, and mother admitted she would be unable to provide a negative test result if she submitted to a drug test that day.

The juvenile court ordered mother to participate in individual counseling, a parenting program, and a drug rehabilitation program that included random drug testing. The court ordered father to attend drug counseling and parenting classes. Both parents were accorded monitored visits.

**Review proceedings**

In September 2010, the Department reported that mother had failed to appear for eight scheduled drug tests. Mother had also failed to consistently attend visits with the children.

Father had been released from jail in August 2010 but failed to contact the Department and make his whereabouts known until late September. On September 21, 2010, mother and father telephoned the social worker and said they planned to enroll in a drug treatment program that day; however, they subsequently failed to do so. At the September 28, 2010 progress hearing, the juvenile court found neither parent to be in compliance with court orders.

At the time of the December 2010 six-month review hearing, neither parent had complied with any portion of their court ordered drug treatment plans. Mother had missed an additional three scheduled drug tests, and neither parent had visited regularly with the children. Mother was again pregnant.

On January 14, 2011, the Department filed a section 387 petition alleging inappropriate care of the children by the maternal cousin. At the hearing on the section 387 petition, the juvenile court found that its prior disposition had not been effective in protecting the children, sustained the petition, and ordered the children detained from the maternal cousin and placed in foster care.

4

A contested six-month review hearing was held on February 1, 2011. Mother's counsel reported that mother had enrolled in a treatment program the previous day. Father's counsel informed the court that father was again incarcerated and would not be released until June or July. The juvenile court found neither parent to be in compliance with their case plan, terminated reunification services, and scheduled a section 366.26 hearing to select a permanent plan for the children.

**Mother's April and September 2011 section 388 petitions**

On April 11, 2011, mother filed a section 388 petition requesting unmonitored visits leading to return of the children to her care. In support of her petition, mother stated she had been living in a shelter since January 31, 2011, attending drug prevention and parenting classes, participating in random alcohol and drug testing, and testing negative for drugs and alcohol for the preceding two months. Mother further stated that she was pregnant and due to give birth in June 2011.

In response to mother's section 388 petition, the Department agreed that family reunification services should be reinstated for mother and the children but recommended monitored rather than unmonitored visits because mother had only recently begun a treatment program. On April 26, 2011, the juvenile court granted mother's section 388 petition in part and reinstated family reunification services for her with monitored visitation.

In May 2011, the Department reported that mother continued to attend her treatment programs and visited consistently with the children. The children remained placed in foster care and were thriving in their foster parents' home. Father remained incarcerated.

Mother filed another section 388 petition on September 1, 2011, seeking return of the children to her custody or, in the alternative, unmonitored overnight or day visits. She continued to attend treatment program sessions and to test negative for drugs and alcohol. The juvenile court set mother's section 388 petition for a hearing and ordered the Department to prepare a response.

5

In October 2011, the Department reported that mother had been enrolled in a recovery program for seven months, had maintained excellent attendance, and had submitted 20 negative breathalyzer tests and 24 negative random drug tests. Mother had given birth to another child, Johnny.

On October 24, 2011, the children's foster family agency submitted a caregiver information form to the juvenile court reporting that on several occasions Isabel and Raymond had returned from visits with mother suffering from bruises and abrasions. In addition, Isabel demonstrated sexualized behavior following her visits with mother. Isabel had exhibited similar behavior in January 2011 when she was removed from the maternal cousin's care, but the behavior had abated until visits at mother's residence began. The foster family agency expressed concern about mother's ability to supervise the children and recommended investigating the source of Isabel's sexualized behavior.

In a last minute information for the court filed on October 27, 2011, the Department's social workers reiterated the concerns expressed by the foster family agency. Isabel and Raymond were returning from the visits with injuries and Isabel was acting out sexually and behaving in an aggressive manner after the visits. The foster family agency had generated two special incident reports concerning the children's injuries, and the Department had received a child abuse referral regarding Isabel and Raymond.

In an October 3, 2011 special incident report, the foster family agency stated that Raymond had sustained an abrasion on his forehead, redness in his diaper area, and swelling and redness around his eyes following an October 1, 2011 visit with mother. Isabel had sustained a bruise on her right hip and marks on her hip and forearm. In a second incident report generated on October 15, 2011, the foster family agency reported that Raymond had returned from a visit with mother with a bruise on his forehead, a superficial cut on his lower lip, and redness on his genitals.

On October 19, 2011, the Department received a referral on its child abuse hotline that Raymond had returned from a visit with mother with a red and swollen penis and that

6

Isabel had redness in her vaginal area. A subsequent forensic evaluation of the children disclosed no sexual abuse.

At the October 27, 2011 hearing on mother's section 388 petition, the juvenile court ordered that mother be allowed unmonitored day visits with the children for up to two hours.

**Further review proceedings**

In November 2011, the Department reported that mother was in compliance with court orders. Father had been released from incarceration but was arrested again for violating his probation after leaving a treatment program where he had been briefly enrolled.

Raymond was attached to his foster parents, and was doing well during his visits with mother. Isabel was also attached to her foster parents but was experiencing anxiety about her permanency. Isabel's teacher reported that the child was touching her vaginal area at school and having extreme crying episodes. Isabel had also regressed in her potty training.

In January 2012, the Department reiterated its concerns about mother's care of the children. Raymond had returned with a black eye following a November 7, 2011 visit with mother. Isabel returned with a two-inch bruise on her shin following a December 3, 2011 visit with mother. On December 17, 2011, Isabel returned from a visit with mother with a rash and raised spots in her diaper area. On December 24, 2011, Isabel returned from a visit with mother with scratches on her face, and Raymond returned with redness in his diaper area. On December 31, 2012, Isabel returned with a swollen lip and Raymond returned with scrapes on his forearm and a two and one-half inch cut that had bled through his shirt sleeve. The foster family agency noted that the children's injuries continued to occur despite multiple efforts to provide mother with parenting support and assistance.

Mother's drug treatment program reported that mother continued to be an active and involved participant in treatment. Mother was expected to complete the program on

May 9, 2012, and her stay had been extended in order to provide her with additional support in caring for the children.

**January 2012 section 366.26 hearing**

A contested section 366.26 hearing commenced on January 17, 2012. After various Department reports were admitted into evidence, the Department's social worker testified that the children were at high risk if they were returned to mother's care. She cited the children's frequent and continued injuries during their visits with mother and expressed concern about mother's ability to supervise three young children.

Mother's parenting instructor testified that she had worked with mother on parenting skills since October 2011, and that she had seen nothing to cause her concern about mother's parenting of infant Johnny. The instructor further testified that she had observed mother and all three children together on three occasions and did not have any concerns about mother's parenting of the children. She said she had seen Raymond run and fall during the last visit with mother but had never seen mother become frustrated with the children.

After hearing from mother's parenting instructor, the juvenile court issued a tentative ruling to return the children to mother's custody. The court agreed, however, to continue the matter to allow the children's attorney to speak with the person who had monitored the majority of mother's visits. The court issued an interim order allowing mother unmonitored visits for six hours. The court ordered mother not to monitor father's visits.

**Father's January 2012 section 388 petition**

Father filed a section 388 petition on January 30, 2012, requesting family reunification services and unmonitored visitation. He submitted evidence indicating he had entered a drug treatment program on September 15, 2011. At the January 30, 2012 hearing, the juvenile court set a future date to consider father's section 388 petition. The court accorded mother overnight weekend visits with the children from Friday morning to Sunday evening and ordered the Department to make unannounced home visits to

mother's residence at least once a week. The court further ordered the children's attorney to send a representative to mother's residence at least once before the next court date. The matter was then continued for four weeks.

The Department recommended that father's section 388 petition be denied. The Department noted that father was not currently participating in random drug testing and that he had no consistent contact with the children for the past nine months.

In a February 2012 last minute information for the court, the Department reported on mother's visits with the children and her status at the sober living facility. The Department's social worker had made several unannounced home visits to mother's sober living facility and found mother caring appropriately for the children and the children responding well to her. The foster family agency had generated three special incident reports, however, regarding injuries the children sustained during their overnight visits with mother in February.

The first incident report, dated February 8, 2012, stated that Isabel had returned from a weekend visit with mother without receiving medication for her eczema throughout the weekend. As a result, the child returned with moderate to severe eczema on her body. Raymond returned from the same visit with bruises on his leg from his knee to his shin, bruises on his left arm and right elbow, and redness between his left thumb and index finger.

The second incident report, dated February 15, 2012, stated that the children were returned in poor health following a weekend visit with mother. Both children had colds, and the foster mother had provided verbal instructions regarding various medications the children were taking. Following the visit with mother, Raymond developed bronchiolitis and an ear infection. He also returned with a scratch on his face, a bruise above his eyebrow, bruises on his legs, and fungus in his diaper area. Isabel returned with bruises on her back and inner thigh.

In the third incident report, dated February 22, 2012, the foster family agency reported that Raymond had sustained a cut and a large bruise on his right shin, four small

9

bruises on the inside of his thighs, a cut on the bottom of his right eye, and a swollen bottom lip during a weekend visit with mother. Isabel returned with bruises on her back, buttocks, and the back of both thighs, as well as a large red mark on her groin area.

The children's foster parents reported that both Raymond and Isabel were demonstrating separation anxiety after their visits with mother. Isabel pleaded with her foster mother to stay home from work, and the children did not want the foster parents to leave their bedroom. Isabel had a tantrum one morning before being dropped off at mother's house, screaming that she did not want to go. The foster mother further reported that the children often returned from visits hungry and thirsty. A February 2012 doctor visit revealed that Raymond's weight had decreased by a half pound since December 2011, and Isabel's weight had decreased by a pound.

On February 21, 2012, the house manager at mother's sober living facility informed the Department that mother had been asked to leave the facility. Although the facility had initially agreed to extend mother's stay in order to provide her with additional support, mother's extension had been terminated because mother had not complied with house rules, ignored her responsibilities, and was disrespectful of the staff and other mothers in the home. Mother had been given three opportunities to modify her behavior and was now being asked to leave by March 1, 2012. The house manager further reported that Raymond slipped and fell during a recent visit because the floor was slippery and the child was not wearing shoes. In response, Mother had called Raymond a "dumb ass."

On February 22, 2012, mother confirmed that she was leaving the sober living home and that she planned to move to an apartment closer to father.

On April 18, 2012, the juvenile court held a hearing on father's section 388 petition. The children's foster mother testified that the children had often returned hungry and thirsty from their day visits with mother and sustained a myriad of injuries. The injuries continued when the children began overnight visits with mother. The

juvenile court admitted into evidence photographs the foster mother had taken of the children's injuries.

The foster mother further testified that Isabel had been doing "inappropriate touching" since visits with mother began, and that Isabel's preschool teacher had reported that the child's behavior was always different on the days immediately following the visits. Isabel had tantrums before nearly every visit with mother, but her tantrums ceased when weekend/overnight visits with mother stopped at the end of February 2012.

Following the foster mother's testimony, the Department's social worker testified that mother was not in compliance with the drug testing component of her treatment plan because she had not drug tested since leaving the sober living facility. The social worker did not know where mother was living because mother had not provided a new address. Mother had not called to arrange for any visits with the children, nor had she spoken to the children by telephone.

The social worker further testified that she was unaware of any visits between father and the children, except two visits in March 2011. She could not recommend unmonitored visits for father because he had not been tested for drugs since December 2011.

At the conclusion of the hearing, the juvenile court denied father's section 388 petition, terminated reunification services for both parents, and scheduled a section 366.26 hearing. The court ordered therapy services for the children and accorded both parents monitored visits.

On July 19, 2012, the Department filed a section 300 petition on behalf of Johnny after the social worker observed a drug pipe and a white granulated substance in mother's home. Johnny was initially detained but subsequently released to both parents.

In August 2012, the Department reported that neither parent had maintained regular contact with the children since May 2012. Father's visits with the children had been sporadic throughout the case, and he had no visitation for extended periods while he

11

was incarcerated. The children's foster parents now had an approved adoption home study, and the Department recommended terminating parental rights.

Neither parent appeared at the section 366.26 hearing scheduled for August 15, 2012. At the request of both parents' counsel, the juvenile court continued the hearing to August 28, 2012.

**August 2012 section 388 petitions and section 366.26 hearing**

On August 28, 2012, father filed a section 388 petition requesting return of the children based on his enrollment in a substance abuse treatment program and parenting course. On the same day, mother also filed a section 388 petition requesting return of the children or reinstatement of family reunification services and liberalized visitation.

A hearing on father's and mother's respective section 388 petitions and a contested section 366.26 hearing were held on August 28, 2012. Father testified that he had completed a six-month drug treatment program in February 2012, and was attending twice weekly narcotics anonymous classes. Father further testified that he was drug testing as part of a voluntary agreement with the Department regarding Johnny, and the test results had been negative. He admitted that he had visited sporadically with Raymond and Isabel throughout the case and that he had not seen the children since April. When asked why he had not visited the children more regularly, father replied, "I was just busy working and -- I don't know."

Mother testified that she had attended a drug program for 13 months but had been asked to leave her sober living facility. She was attending twice weekly narcotics anonymous classes and was drug testing regularly through the Department. All of her drug test results had been negative. Mother further testified she had been visiting "recently" with the children, but admitted that she had seen them only three times in the last several months. She had not visited more consistently because she had been emotionally stressed.

After hearing argument from counsel, the juvenile court denied both parents' section 388 petitions. The court found that both parents' circumstances were changing

12

rather than changed and that neither parent had consistently been sober or had a relationship with the children. The court further found that it was not in the children's best interests to return them to their parents' care.

The court then proceeded to the section 366.26 hearing, found no exception to terminating parental rights applied, and terminated both mother's and father's parental rights. This appeal followed.

**DISCUSSION**

## I. Section 388 petitions

Section 388 provides in relevant part: "Any parent . . . [of] a child who is a dependent child of the juvenile court . . . may, upon grounds of change of circumstance or new evidence, petition the court . . . to change, modify, or set aside any order of court previously made." To obtain the requested modification, the parent must demonstrate both a change of circumstances or new evidence, and that the proposed change is in the best interests of the child. (§ 388, subd. (a)(1); Cal. Rules of Court, rule 5.570(a) & (e); *In re Casey D.* (1999) 70 Cal.App.4th 38, 47.) "[T]he change of circumstances or new evidence must be of such significant nature that it requires a setting aside or modification of the challenged prior order." (*Ansley v. Superior Court* (1986) 185 Cal.App.3d 477, 485.)

The parent bears the burden of proving the requested modification should be granted. (Cal. Rules of Court, rule 5.570(i); *In re Stephanie M.* (1994) 7 Cal.4th 295, 317.) A juvenile court's determination on a petition brought under section 388 is reviewed under the abuse of discretion standard. (*Stephanie M., supra*, at p. 318.)

### A. *Mother's section 388 petition*

The juvenile court concluded that granting mother's petition to return the children to her care or, in the alternative, to reinstate reunification services and liberalize her visits, was not in the children's best interests. Factors to be considered in determining what is in the best interests of a child under section 388 include "(1) the seriousness of the problem which led to the dependency, and the reason for any continuation of that

13

problem; (2) the strength of relative bonds between the dependent children to *both* parent and caretakers; and (3) the degree to which the problem may be easily removed or ameliorated, and the degree to which it actually has been." (*In re Kimberly F.* (1997) 56 Cal.App.4th 519, 532.)

Mother failed to establish that her substance abuse problem -- which led to the children's removal from her care -- had been resolved. Mother's substance abuse problem was a long-standing one. At the outset of the case, mother admitted to a 17-year history of methamphetamine use and to being in and out of drug treatment programs for her entire life. Although mother had completed a 13-month treatment program, a drug pipe was found in her residence a few months after she was asked to leave her sober living residence. After she was discharged from her sober living facility, mother stopped having regular contact with the Department and failed to consistently test for drug use. The juvenile court found that the three negative drug tests mother submitted in support of her section 388 petition -- one in April 2012 and two taken over the course of a week in August 2012 -- were insufficient to establish that mother had consistently been sober.

Mother also failed to establish that granting her petition would be in the children's best interests. The record shows that following unmonitored visits with mother both Isabel and Raymond returned to their foster home repeatedly suffering from bruises and abrasions. Isabel resisted attending visits with mother and had tantrums before the visits and behavioral issues after the visits.

The record discloses no abuse of discretion by the juvenile court in denying mother's section 388 petition.

### B. *Father's section 388 petition*

Father's section 388 petition also failed to establish a change in circumstances. Father submitted no evidence to support his claim that he had completed a six-month treatment program in February 2012. A drug pipe was found in his residence in July 2012. He was incarcerated repeatedly throughout the case for either possessing illegal substances or violating the terms of his parole. Much of the information submitted in

14

support of father's August 28, 2012 petition was the same as that submitted in support of a previous section 388 petition filed in January 2012 and denied by the juvenile court.

Father failed to maintain any consistent contact with the children during the more than two-year duration of the case. He had no contact with them between August and December 2011 and between April and July 2012. There was no evidence of any bond between father and the children.

The juvenile court's denial of father's section 388 petition was not an abuse of discretion.

## II. Termination of parental rights

Section 366.26, subdivision (c)(1), provides for the termination of parental rights if family reunification services have been terminated and the juvenile court finds by clear and convincing evidence that the child is likely to be adopted. Once reunification services have been terminated, "'[f]amily preservation ceases to be of overriding concern . . . the focus shifts from the parent's interest in reunification to the child's interest in permanency and stability. [Citations.]'" (*In re Richard C.* (1998) 68 Cal.App.4th 1191, 1195.) "Adoption, where possible, is the permanent plan preferred by the Legislature. [Citation.]" (*In re Autumn H.* (1994) 27 Cal.App.4th 567, 573 (*Autumn H.*).) Although the statutory preference is in favor of adoption, section 366.26 lists certain exceptions that may preclude termination of parental rights, if the juvenile court finds "a compelling reason for determining that termination would be detrimental to the child." (§ 366.26, subd. (c)(1)(B).) The exception relevant to the instant case provides as follows: "The parents have maintained regular visitation and contact with the child and the child would benefit from continuing the relationship." (§ 366.26, subd. (c)(1)(B)(i).)

The parent bears the burden of proving that this exception applies. (*In re L. Y. L.* (2002) 101 Cal.App.4th 942, 952-954.) "[T]he exception does not permit a parent who has failed to reunify with an adoptable child to derail an adoption merely by showing the child would derive some benefit from continuing a relationship maintained during

15

periods of visitation with the parent." (*In re Jasmine D.* (2000) 78 Cal.App.4th 1339, 1348.)

For the exception to apply, the parent must have maintained regular visitation with the child, and the juvenile court must determine that the parent/child relationship "promotes the well-being of the child to such a degree as to outweigh the well-being the child would gain in a permanent home with new, adoptive parents. In other words, the court balances the strength and quality of the natural parent/child relationship in a tenuous placement against the security and the sense of belonging a new family would confer." (*Autumn H., supra*, 27 Cal.App.4th at p. 575.) A parent must establish more than merely some benefit to the child by continuing the parent child/relationship. That relationship must be "a substantial, positive emotional attachment such that the child would be greatly harmed" if the relationship were severed. (*Ibid.*) To overcome the benefits associated with a stable, adoptive family, the parent seeking to continue a relationship with the child must prove that severing the relationship will cause not merely some harm, but *great harm* to the child. (*In re Brittany C.* (1999) 76 Cal.App.4th 847, 853.) Factors that the juvenile court should consider when determining the applicability of the exception include "[t]he age of the child, the portion of the child's life spent in the parent's custody, the 'positive' or 'negative' effect of interaction between parent and child, and the child's particular needs . . . ." (*Autumn H., supra*, 27 Cal.App.4th at p. 576.)

The juvenile court's ruling on whether an exception applies to terminating parental rights pursuant to section 366.26 is reviewed under the substantial evidence standard. (*In re Cliffton B.* (2000) 81 Cal.App.4th 415, 424-425; *Autumn H., supra*, 27 Cal.App.4th at p. 576.) Under this standard, an appellate court must affirm the juvenile court's order if there is evidence that is reasonable, credible, and of solid value to support the order (*In re Christina A.* (1989) 213 Cal.App.3d 1073, 1080), and the evidence must be considered "in the light most favorable to the prevailing party, giving the prevailing party the benefit

of every reasonable inference and resolving all conflicts in support of the order. [Citations.]" (*Autumn H.*, at p. 576.)

There is ample support in the record for the juvenile court's determination that the parental exception to terminating mother's parental rights did not apply. Mother failed to meet her burden of establishing regular visitation with the children. Her visits were sporadic throughout the more than two-year duration of the case. Mother failed to visit consistently during the first six months of family reunification services. Although the consistency of mother's visits improved during her stay at a sober living facility, she failed to maintain contact with the children after her discharge from that facility, and her visits again became sporadic. At the contested 366.26 hearing on August 28, 2012, mother admitted she had visited with the children only three times during the past several months.

There was scant evidence of a parent/child bond that would cause the children harm if severed or that would outweigh the benefits of a stable and permanent adoptive home. Rather, there was evidence that Isabel had tantrums before visits with mother and behavioral problems after the visits and that her tantrums stopped when the visits with mother ceased.

The children's prospective adoptive parents were able and willing to care for them, had an approved home study, and were willing to adopt both children. Substantial evidence supports the juvenile court's determination that the children's need for stability outweighed any benefit they would derive from continuing a parent/child relationship with mother.

17

## DISPOSITION

The order denying mother's and father's respective section 388 petitions and terminating the parental rights of both parents is affirmed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.


_____, J.
CHAVEZ

We concur:


_____, P. J.
BOREN


_____, J.
ASHMANN-GERST

18