[No. A082506. First Dist., Div. Three. Dec. 30, 1998.]

In re RICHARD C. et al., Persons Coming Under the Juvenile Court Law.
SOLANO COUNTY SOCIAL SERVICES AGENCY, Plaintiff and
Respondent, v.
RENEE C., Defendant and Appellant.

## COUNSEL

Carole Greeley, under appointment by the Court of Appeal, for Defendant and Appellant.

Dennis Bunting, County Counsel, Vicki Sieber-Benson, Assistant County Counsel, and Charles B. Wood, Deputy County Counsel, for Plaintiff and Respondent.

## OPINION

**PARRILLI, J.**—Renee C. appeals from orders terminating her parental rights and declaring her sons Scott and Richard likely candidates for adoption. Her only claim is that the juvenile court erred by denying her motion to order a bonding study. She sought the bonding study in an attempt to show that Scott and Richard would benefit from continuing the parent-child relationship. If she were also able to show that she had maintained regular visitation and contact with the boys, then the court would have had grounds

for not terminating her parental rights. (Welf. & Inst. Code, § 366.26, subd. (c)(1)(A).)[1] We affirm the juvenile court's order. Renee's motion for a bonding study came too late in the proceedings to be a necessary part of the court's efforts to develop a permanent plan for the children.

Richard was born in January 1988 and Scott in March 1994. The boys were declared dependent children in March 1996, after Richard reported that Renee's boyfriend Scott R. was sexually abusing him. She resisted complying with the counseling and visitation provisions of her reunification plan until after Scott R. was convicted. In September 1997, the juvenile court terminated reunification services and set a hearing to establish a permanent plan for the children under section 366.26. Renee filed a writ petition challenging that decision, which we denied on the merits.

The social worker's report for the section 366.26 hearing, prepared on January 5, 1998, stated Renee was visiting her children every other week, and the boys enjoyed the visits. However, the social worker concluded Renee had failed to reunify with her sons. Her visitation was supervised; Richard did not trust her due to her prolonged failure to believe him about the abuse; and both boys had bonded with their prospective adoptive families, with whom they had been living for two years. At a hearing on January 27, 1998, Renee's counsel made an oral motion for a bonding study, informing the court her office would pay for the study and had lined up an experienced psychologist. The children's counsel opposed the motion, arguing there was no prima facie basis for a bonding study and it would be cruel to "put my client through psychological testing and bonding study with a stranger." Renee's counsel contended there was a bond between the children and their mother that would be detrimental to break, and an impartial expert was needed to counter the assessment of the department of social services. The court noted the boys had not been getting "consistent and persistent" care and support from Renee, and it denied the motion "[b]ased on the entire record."

Renee's counsel renewed her request for a bonding study in a written motion filed February 9, 1998. She stated that while Renee's visitation had been sporadic at first, it had been regular for the past year. She noted Renee

[1]Further statutory references are to the Welfare and Institutions Code. Section 366.26 governs permanency planning hearings, which are scheduled only after the reunification services provided to the parents have been exhausted. Subdivision (c)(1) requires the juvenile court to terminate parental rights if it determines by clear and convincing evidence that the child is likely to be adopted, "unless the court finds that termination would be detrimental to the minor due to one of the following circumstances: [¶] (A) The parents or guardians have maintained regular visitation and contact with the minor and the minor would benefit from continuing the relationship. . . ."

had not failed to request a bonding study, as in *In re Lorenzo C.* (1997) 54 Cal.App.4th 1330, 1338 [63 Cal.Rptr.2d 562], nor would a bonding study in this case duplicate work already done by other experts, as in *In re Jennifer J.* (1992) 8 Cal.App.4th 1080, 1084 [10 Cal.Rptr.2d 813].) Counsel argued: "Due process and equal protection would seem to require that the court should allow a neutral expert to provide evidence on such an important issue. Otherwise, the mother is only left with witnesses secured and paid by her opponents." Counsel offered no argument at the hearing on the motion, which the court denied, stating it had reviewed counsel's points and authorities and the entire file.

On appeal, Renee contends it was an abuse of discretion to deny her motion for a bonding study, and pursues her claim that she has a due process right to rebut the evidence provided by the department of social services. However, at such a late stage in the proceedings Renee's right to develop further evidence regarding her bond with the children was approaching the vanishing point. "There is no requirement in statutory or case law that a court must secure a bonding study as a condition precedent to a termination order. . . . [A]lthough the preservation of a minor's family ties is one of the goals of the dependency laws, it is of critical importance only at the point in the proceeding when the court removes a dependent child from parental custody (§ 202, subd. (a)). [Fn. omitted.] Family preservation ceases to be of overriding concern if a dependent child cannot be safely returned to parental custody and the juvenile court terminates reunification services. Then, the focus shifts from the parent's interest in reunification to the child's interest in permanency and stability. [Citation.]" (*In re Lorenzo C., supra*, 54 Cal.App.4th 1330, 1339-1340.) As was the case in *Lorenzo C.*, the issue before us arose well after the juvenile court removed the children from Renee's custody and terminated reunification services.

Our Supreme Court has repeatedly emphasized the shift in emphasis at the section 366.26 hearing and rejected due process challenges to this aspect of the statutory scheme. "By the time termination is possible under our dependency statutes the danger to the child from parental unfitness is so well established that there is no longer 'reason to believe that positive, nurturing parent-child relationships exist' [citation], and the *parens patriae* interest of the state favoring preservation rather than severance of natural familial bonds has been extinguished. At this point . . . it has become clear 'that the natural parent cannot or will not provide a normal home for the child' [citation], and the state's interest in finding the child a permanent alternate home is fully realized. In light of the earlier judicial determinations that reunification cannot be effectuated, it becomes inimical to the interests of the minor to heavily burden efforts to place the child in a permanent

alternative home. By the time of the section 366.26 hearing, no state interest requires further evidence of the consequences to the child of parental unfitness . . . ." (*Cynthia D.* v. *Superior Court* (1993) 5 Cal.4th 242, 256 [19 Cal.Rptr.2d 698, 851 P.2d 1307].)

"Although a parent's interest in the care, custody and companionship of a child is a liberty interest that may not be interfered with in the absence of a compelling state interest, the welfare of a child is a compelling state interest that a state has not only a right, but a duty, to protect. [Citations.] The Legislature has declared that California has an interest in providing stable, permanent homes for children who have been removed from parental custody and for whom reunification efforts with their parents have been unsuccessful. [Citations.] This interest is a compelling one. [Citation.] The state's interest requires the court to concentrate its efforts, once reunification services have been terminated, on the child's placement and well-being, rather than on a parent's challenge to a custody order." (*In re Marilyn H.* (1993) 5 Cal.4th 295, 307 [19 Cal.Rptr.2d 544, 851 P.2d 826].) "Once reunification services are ordered terminated, the focus shifts to the needs of the child for permanency and stability. A hearing pursuant to section 366.26 to select and implement a permanent plan for the children is to be heard within 120 days from the time it was set. [Citations.] The court need not continue to consider the issue of reunification at the section 366.26 hearing. The burden thereafter is on the parent to prove changed circumstances pursuant to section 388 to revive the reunification issue." (*Id.* at p. 309; see also *In re Stephanie M.* (1994) 7 Cal.4th 295, 317, 324-326 [27 Cal.Rptr.2d 595, 867 P.2d 706]; *In re Jasmon O.* (1994) 8 Cal.4th 398, 419-421 [33 Cal.Rptr.2d 85, 878 P.2d 1297].)

▪ In this case, after the court denied her motion for a bonding study, Renee unsuccessfully petitioned under section 388 to reinstate reunification services. We understand that a bonding study may have enabled her to make a stronger case at the section 388 hearing. However, under the dependency scheme described by the Supreme Court in the cases cited above, Renee was required to muster her evidence before the termination of reunification services. The kind of parent-child bond the court may rely on to avoid termination of parental rights under the exception provided in section 366.26, subdivision (c)(1)(A) does not arise in the short period between the termination of services and the section 366.26 hearing. "The exception applies only where the court finds regular visits and contact have continued or developed a significant, positive, emotional attachment from child to parent. [¶] At the time the court makes its determination, the parent and child have been in the dependency process for 12 months or longer, during which time the nature and extent of the particular relationship should be apparent."

(*In re Autumn H.* (1994) 27 Cal.App.4th 567, 575 [32 Cal.Rptr.2d 535]; see also *In re Elizabeth M.* (1997) 52 Cal.App.4th 318, 324 [60 Cal.Rptr.2d 557].)

Bonding studies after the termination of reunification services would frequently require delays in permanency planning. Similar requests to acquire additional evidence in support of a parent's claim under section 366.26, subdivision (c)(1)(A) could be asserted in nearly every dependency proceeding where the parent has maintained some contact with the child.[2] The Legislature did not contemplate such last-minute efforts to put off permanent placement. (*In re Marilyn H., supra,* 5 Cal.4th at p. 310 ["lengthy and unnecessary delay in providing permanency for children" is "the very evil the Legislature intended to correct"].) While it is not beyond the juvenile court's discretion to order a bonding study late in the process under compelling circumstances, the denial of a belated request for such a study is fully consistent with the scheme of the dependency statutes, and with due process. We conclude the juvenile court did not abuse its discretion in denying Renee's motion for a bonding study.

DISPOSITION

The order is affirmed.

Corrigan, Acting P. J., and Walker, J., concurred.

A petition for a rehearing was denied January 26, 1999, and the opinion was modified to read as printed above. Appellant's petition for review by the Supreme Court was denied April 14, 1999.

---

[2]Nothing in our opinion should be read to curtail a parent's right to discover existing evidence in order to support a section 388 petition. (See Cal. Rules of Court, rule 1420 [governing prehearing disclosures of information].)