Filed 1/12/21  In re J.M. CA2/4

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(a). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115(a).

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| In re J.M. et al., Persons Coming Under the Juvenile Court Law. | B305167 (Los Angeles County Super. Ct. No. 18CCJP05014) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>L.C. et al.,<br><br>Defendants and Appellants. | |

APPEAL from orders of the Superior Court of Los Angeles County, Martha A. Matthews, Judge. Affirmed.

Zaragoza Law Firm, Gina Zaragoza, under appointment by the Court of Appeal, for Defendant and Appellant L.C.

Megan Turkat Schirn, under appointment by the Court of Appeal, for Defendant and Appellant B.G.

Mary C. Wickham, County Counsel, Kim Nemoy, Acting Assistant County Counsel, Jessica S. Mitchell, Deputy County Counsel for Plaintiff and Respondent.

L.C. and B.G., the mother and presumed father of two-year-old A.G., appeal from the denial of petitions to modify prior juvenile court orders (Welf. & Inst. Code, § 388)[1] and the court's subsequent order terminating parental rights to A.G. and identifying adoption as A.G.'s permanent plan. (§ 366.26.) L.C. also appeals from the order denying her petition to modify prior juvenile court orders concerning five-year-old J.M., whose presumed father is Juan M.[2] L.C. and B.G. contend the court abused its discretion in denying a continuance to pursue a bonding study. Finding no abuse of discretion, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

1.    **Prior Dependency Proceedings on Behalf of J.M.
      and the Issuance of a 10-Year Criminal Protective
      Order Against Juan M.**

In February 2015, a dependency petition was sustained alleging Juan M. had engaged in physical altercations with L.C., endangering infant J.M. J.M. was removed from Juan M.'s custody and placed with L.C., and family preservation services were offered to L.C. In 2016, jurisdiction was terminated and L.C. was awarded sole legal and physical custody of J.M. with

---

1    Statutory references are to the Welfare and Institutions Code.

2    Juan M. did not file a section 388 petition. The section 366.26 hearing concerning his son J.M. was continued, because Juan M. was incarcerated, as he was throughout most of this dependency proceeding.

monitored visits for Juan M. A 10-year criminal protective order was entered, protecting L.C. from Juan M. until 2025.

## 2. Filing of a Dependency Petition on Behalf of the Children Following L.C.'s Separate Physical Altercations with Juan M. and B.G.

In August 2018, the Department of Children and Family Services (Department) filed a dependency petition on behalf of three-year-old J.M. and infant A.G. alleging they were endangered in June 2018, when Juan M. engaged in a physical altercation with L.C., who contacted Juan M. in violation of the criminal protective order; and in July 2018 when L.C. physically attacked B.G. while he was holding A.G.

L.C. acknowledged her mistake in visiting Juan M., but did not grasp the seriousness of her actions. She contended Juan M. was a good father, and they were working things out. L.C. denied having "touched" B.G., insisting the physical altercation never occurred, and he was "a liar."

The juvenile court ordered that the children remain released to L.C. with family maintenance services and monitored visitation for Juan M. and B.G. L.C. and B.G. were to have no contact with each other.

## 3. Arrest of B.G. for Inflicting Corporal Injury and Removal of the Children from L.C. for Having Contact with B.G.

In September 2018, the Department learned B.G. was arrested for a domestic violence incident involving his new

girlfriend, and L.C. had renewed her relationship with B.G., permitting him unmonitored contact with A.G. L.C. acknowledged she and B.G. were together, but falsely claimed A.G. was not with them. L.C. believed the Department was overreacting; she and B.G. wanted to be together now that the new girlfriend had him arrested. B.G. confirmed that A.G. was with them and they wanted to be together now as a family.

The juvenile court approved the Department's request for a protective custody warrant to remove the children from L.C. because of the unauthorized contact with B.G. The children were removed on October 11, 2018 and placed in foster care.

On October 15, 2018, the Department filed an amended dependency petition adding allegations the children were at risk of serious physical harm by B.G.'s physical altercation with his new girlfriend and L.C.'s unauthorized contact with B.G. in violation of a court order. The petition also alleged L.C. had a history of substance abuse and B.G. was a current substance abuser. The children were ordered to remain in foster care. By the time of the continued jurisdiction hearing on December 19, 2018, B.G. had been convicted of vandalism and was incarcerated.

At the jurisdiction hearing, B.G. and L.C. each signed a waiver form and pleaded no contest to the allegations. The juvenile court sustained the petition, with the exception of the substance abuse allegations, which were dismissed.

At the disposition hearing, the juvenile court declared the children dependents of the court under section 300, subdivisions (a) and (b) and ordered them removed from parental custody and placed in suitable placement. The court ordered monitored visitation and reunification services for L.C. No reunification

4

services were ordered for B.G. due to his incarceration (§ 361.5, subd. (a)); he was to have monitored visits upon release.

**4.     The Six- and 12-Month Review Hearings**

Prior to the six-month review hearing, the Department learned L.C. had been arrested in June 2019 for being the aggressor in a domestic violence incident involving her new boyfriend. L.C. said she felt "unsupported" and blamed her new boyfriend for "mak[ing] a big deal and just being a crybaby." The children were not present. L.C.'s previously liberalized unmonitored visitation reverted to monitored visitation. The Department recommended she participate in an anger management program.

At the six-month review hearing, the juvenile court found L.C. had made partial progress and ordered continued family reunification services. L.C. was given a referral for anger management counseling. The children were to remain in foster care.

Despite some initial progress, L.C. began to relapse into her former habit of minimizing the domestic violence incidents, blaming others, and refusing to take responsibility for her impulsive actions. The Department was concerned L.C. still lacked the insight and skills necessary to ensure her children's safety.

The Department's September 6, 2019 Status Review report had a change in recommendation to terminate reunification services and set a section 366.26 hearing.

At the September 6, 2019 12-month review hearing, the juvenile court terminated L.C.'s reunification services and ordered a section 366.26 hearing for December 19, 2019.

**5.    Continuance of Section 366.26 Hearing and Denial of L.C.'s Request for a Court-Ordered Bonding Study**

On December 19, 2019, the juvenile court continued the section 366.26 hearing to March 6, 2020 for the completion of an adoption readiness assessment and a hearing on L.C.'s newly filed section 388 petition. In her petition, L.C. sought to modify the court's September 6, 2019 order terminating reunification services and requested reinstatement of reunification services, and the return of the children to her custody, or in the alternative, unmonitored visitation. B.G. subsequently petitioned for reunification services. His section 388 petition was also to be heard on March 6, 2020.

L.C. requested the court to order a bonding study. In denying the request, the court explained a bonding study would "just take too long" under the circumstances. However, the court agreed with the Department that L.C. could obtain her own bonding study.

**6.    Denial of L.C.'s and B.G.'s Requested Continuance and Section 388 Petitions, and Termination of Their Parental Rights**

At the March 6, 2020 hearing, L.C., moved for a 30-day continuance to conduct the bonding study. She explained the bonding study had not occurred as planned due to

misunderstandings and miscommunications among the parties. The juvenile court denied the motion.

The court summarily denied B.G.'s section 388 petition. The court noted that, since his November 1, 2019 release from custody, B.G.'s monitored visits with two-year-old A.G. had not all gone well. The court determined that ordering reunification services for B.G. would not serve A.G.'s best interest after nearly 18 months in her current placement.

L.C. testified in support of her section 388 petition that she understood the cycle of violence, complied with her case plan, and visited her children. In denying the petition, the court observed L.C. had failed to internalize the lessons of her court-ordered programs and classes, as evidenced by her continuous verbal and physically combative behavior since the termination of reunification services. The court pointed to L.C.'s recent verbal comments and threats towards a social worker in the children's presence and physical altercation with a coworker in a parking lot. Also "startling" to the court was L.C.'s testimony that she and B.G. had never been involved in a physical altercation. The court found L.C. had not shown changed conditions and the requested order would not be in the children's best interest.

As for the section 366.26 portion of the hearing, the Department recommended adoption by the current foster parents. The juvenile court found no exception to adoption applied and terminated parental rights for A.G. The court continued the section 366.26 hearing for J.M. because Juan M. was not present and was still in custody.

7

## DISCUSSION

L.C. and B.G. contend the juvenile court abused its discretion by refusing to continue the March 6, 2020 hearing to pursue a bonding study.

We review the denial of a continuance for an abuse of discretion. (*In re Karla C.* (2003) 113 Cal.App.4th 166, 180.) In dependency cases, continuances shall be granted only upon a showing of good cause (§ 352, subd. (a)), and the parent has the burden to establish that good cause. (*Renee S. v. Superior Court* (1999) 76 Cal.App.4th 187, 196.)

L.C. and B.G. argue there was good cause to grant the continuance. The court had permitted L.C. to obtain her own bonding study. Yet, according to the parents, after necessary arrangements had been made, minors' counsel and the Department "thwarted [L.C.'s] efforts to have the study actually occur." L.C. and B.G. cite no authority that minors' counsel or the Department acted improperly by not participating in the bonding study in the absence of a court order. In essence, the parents are saying they were entitled to a continuance because the planned bonding study did not take place. This is not good cause.

Bonding studies assist the juvenile court in determining the applicability of the beneficial relationship exception to the termination of parental rights under section 366.26, subdivision (c)(1)(B)(i). (See *San Diego Dep't of Social Services v. Tina G. (in re Tabatha G)* (1996) 45 Cal.App.4th 1159, 1167.) The court, however, is not required to order a bonding study as a condition precedent to terminating parental rights. (*In re Lorenzo C.* (1997) 54 Cal.App.4th 1330, 1339.) "The denial of a belated request for [a bonding] study is fully consistent with the scheme of the

8

dependency statutes, and with due process." (*In re Richard C.* (1998) 68 Cal.App.4th 1191, 1197.)

L.C. and B.G. argue the bonding study was necessary to help establish the beneficial relationship exception as well as the reinstatement of reunification services. On this record, the juvenile court's decision to deny a continuance for a bonding study was not an abuse of discretion. First, as the court made clear, even if the bonding study were favorable, it would not have proved helpful as urged by the parents. The issue before the court was not whether L.C. and her children were bonded, but whether L.C. had shown she could safely parent the children. The court also noted existing evidence in the record showed L.C.'s relationship with her children had a negative impact on them.

In any event, to the extent the bonding study could have proved helpful as the parents contend, it was a question of too little too late. The children were removed from L.C. pursuant to a protective order on October 11, 2018. Her reunification services were terminated on September 6, 2019. At that point, family preservation was no longer an overriding concern. The focus shifted to the interests of J.M. and A.G. in permanency and stability, once they were removed from parental custody and reunification services were terminated. (*In re Lorenzo C., supra,* 54 Cal.App.4th at pp. 1340-1341.) L.C.'s request for a court-ordered bonding study was rejected in December 2019. After her own planned study fell through, L.C., joined by B.G., did not seek to conduct a bonding study until the March 6, 2020 section 366.26 hearing.  At that point, the children had been in foster care for nearly 18 months. Granting a continuance would have simply added more delay to an already drawn out case. Continuances in dependency proceedings court are expressly discouraged because

the Legislature seeks to prevent children from remaining in dependency limbo any longer than necessary. (*In re Emily L.* (1989) 212 Cal.App.3d 734, 743; see *In re David H.* (2008) 165 Cal.App.4th 1626, 1635.) There was no abuse of discretion.

## DISPOSITION

The orders denying L.C.'s and B.G.'s section 388 petitions to modify prior juvenile court orders and terminating their parental rights to A.G. are affirmed. The order denying L.C.'s petition to modify prior juvenile court orders concerning J.M is also affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

CURREY, J.

We concur:

MANELLA, P.J.

WILLHITE, J.

10