Filed 5/26/22  In re A.T. CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re A.T., a Person Coming Under the Juvenile Court Law. | |
| ORANGE COUNTY SOCIAL SERVICES AGENCY,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>L.R.,<br><br>    Defendant and Appellant. | G060878<br><br>(Super. Ct. No. 19DP1140)<br><br>O P I N I O N |

Appeal from orders and judgment of the Superior Court of Orange County, Antony C. Ufland, Judge.  Affirmed.

Donna B. Kaiser, under appointment by the Court of Appeal, for Defendant and Appellant.

Leon J. Page, County Counsel, Karen L. Christensen and Deborah B. Morse, Deputy County Counsel, for Plaintiff and Respondent.

L.R. (Mother) appeals from the juvenile court's order denying her Welfare and Institutions Code section 388[1] petition requesting custody of A.T. or further reunification services. She also appeals from the court's judgment terminating her parental rights pursuant to section 366.26 (.26). We find no error and affirm the court's orders.

FACTS

I. *Parties' Relationship and Previous Referral*

For context, we explain the familial relationship underpinning this case. Mother has four children: Teenagers A.R. (born 2003), C.R. (born 2006), and I.R. (born 2007) (collectively referred to as the teenagers), as well as toddler A.T. (born 2018) (all four collectively referred to as children). The father of the teenagers is A.R., Sr., and he was in prison in August 2019 . The father of A.T., who is the only child at issue in this appeal, is J.T. J.T. is not a party to this appeal.

The Orange County Social Services Agency (SSA) substantiated prior referrals in 2016 for neglect due to Mother's substance use and the children being left unsupervised. Mother did not comply with a voluntary case plan and services.

II. *Detention, Jurisdiction, Disposition*

On August 30, 2019, police arrested Mother, and she remained in custody. On September 13, 2019, SSA filed a request for a protective custody warrant regarding the children.

A few days later, SSA filed a petition alleging under section 300, subdivisions (b)(1) and (g), that: Mother had an unresolved substance abuse problem that included methamphetamine and alcohol; she frequently left the children unsupervised; she previously failed to comply with services; A.R. and C.R. had substance abuse

---

[1] All further statutory references are to the Welfare and Institutions Code.

2

problems with marijuana and unlawfully obtained prescription medication; J.T. had an unresolved substance abuse problem with methamphetamine and marijuana and his whereabouts were unknown; police arrested Mother for human trafficking, she was incarcerated, and had failed to provide for the care of her children; A.R., Sr., was convicted of murder in 2014 and sentenced to 25 years to life in prison; and all three parents had criminal records, which included a driving under the influence conviction for Mother.

The court held a detention hearing for all four children on September 18, 2019. The court appointed counsel for Mother and detained the children. The court held the adjudication and disposition hearing on November 26, 2019. Mother was not present. Mother's counsel had spoken with her, and he submitted on the reports and the recommendation. The court made true findings on the petition under section 300, subdivisions (b)(1) and (g), removed the children from the parents' custody, and ordered the children placed in a suitable placement.

III. *Review Period*

A.T. remained in the care of paternal grandparents. His older brothers visited in the home of maternal grandmother. Mother visited weekly with the children while she was in custody in Santa Ana and spoke with them on the phone consistently. Mother was unable to complete parenting and substance abuse programs in custody. Her expected release date was May 30, 2020. Father visited A.T. every other week.

At the six-month review on May 27, 2020, the court determined parents had made minimal progress and kept A.T. in his current placement. It found J.T. to be A.T.'s presumed father.

As of November 2020, SSA reported Mother lived in a sober living home and was working full-time. She was participating in parenting, individual therapy, and an outpatient program at KC Services. Her progress was moderate. Mother's visits with the

3

children increased to a total of 16 hours over four days. The visits were supervised by maternal grandmother in her residence.

As of December 2020, Mother was in the final stage of her outpatient substance abuse treatment program. She had completed parent education and continued to participate in substance abuse testing, 12-step meetings, and counseling. She reported she had been one-year sober.

Mother later relapsed in December 2020, but in late January 2021 she reenrolled in an outpatient substance abuse program. Prior to reenrolling, Mother failed to drug test in December 2020 and for the first two weeks of January 2021.

On February 19, 2021, the court held a review hearing. Parents' trial counsel waived their appearances and proceeded by stipulation. The court determined Mother's progress moderate and J.T.'s minimal. It terminated the parents' reunification services, continued A.T. in placement, and ordered that pursuant to the negotiated agreement SSA provide funding for services (including drug/alcohol testing and general counseling) to Mother through the initial hearing date for the section 366.26 hearing (then set for June 17).

In June 2021, SSA reported in its .26 report that Mother and children attended in-person visits twice a week and the visits occurred at maternal grandmother's home, where Mother lived. Mother's visits with the children were 9 to 10 hours per day and a total of 20 hours per week.

SSA reported A.T. was generally adoptable. He was healthy and the paternal grandparents wanted to adopt him. SSA's report recommended parental rights be terminated as to A.T.

In June 2021, Mother filed a section 388 petition requesting either a return of her children to her custody or six more months of services. Also in June 2021, Mother's counsel, Rachel Novak, requested a continuance of the .26 hearing to permit

4

time for an expert to review the .26 report. Novak informed the court her office hired an expert to conduct a bonding study. Novak requested the expert be permitted to observe one visit by Mother with A.T., C.R., and I.R. Novak stated that after discussion with the expert and Novak's review of reports, there was not enough information in the report about Mother's visitation or sibling visitation for the expert to form an opinion on the matter of the sibling relationship or the parental-benefit relationship exceptions to adoption. The court denied her request.

In late July 2021, SSA reported Mother had another person drug test for her on July 5, 2021. SSA reported as of October 6, 2021, Mother had 18 negative drug tests from June through September, a positive test for synthetic THC on August 16, and seven no-shows between August 6 to September 3. SSA informed Mother the no-shows were regarded as positive tests. Mother testified it was hard to keep up with the drug testing.

IV. *Combined Hearing*

On October 5, 2021, the juvenile court held a combined section 388 and .26 hearing. Mother attended. Social worker Monica Cardenas testified. Cardenas was the primary social worker who prepared the .26 report and two of the addendum reports admitted into evidence. She stated although she recommended adoption for A.T., she had never observed a visit between him and Mother. The information she had regarding the frequency of visits and their activities during visits was given to her by the caregivers and maternal grandmother.

On October 6, 2021, social worker Raul Reyes testified. Reyes prepared the three final addendum reports admitted into evidence. Reyes testified it would not be detrimental to A.T. should his relationship with Mother and the half-siblings be severed. Reyes opposed returning the children to Mother's home because she had no beds for the children and because she had not yet completed the parenting component in her case

5

plan.[2]  Reyes expressed concern because of her substance abuse history.  Specifically, because Mother had someone else test for her a few months earlier and because she had a positive marijuana test in August.

Mother testified.  She explained a friend drug tested for her in July because she drank alcohol the night before the test and was scared.  She admitted having a positive marijuana test in August.  Mother stated she completed a drug program three months earlier.  Since then, she had been in recovery at KC Services.  Mother attended Alcoholics Anonymous meetings irregularly but had begun attending women's meetings during the past three weeks.  Mother believed she had better control over her addiction.  She had not consumed alcohol since July and had not used marijuana since August.

In August 2021, Mother leased a two-bedroom apartment and since then obtained a refrigerator, dining table, couches, microwave, and sleeping mats.  She missed five drug tests in August because sometimes she forgot to call the testing phone number and sometimes she was busy with the children.

Mother described visits with A.T.  When she went to pick him up for visits, he ran to her, called "Mommy.  Mommy," and kissed her.

Maternal grandmother testified.  She supervised Mother's visits with A.T.  Mother cooked for A.T., bathed him, played with him, and put him down for naps.  Mother could calm him when he cried, and she changed his diaper.  A.T. called Mother, "mommy."  She described A.T. as very affectionate with Mother and said "he loves [Mother] a lot."

During argument, SSA requested the court deny Mother's section 388 petition and adopt the plan of adoption for A.T.  Counsel for C.R. and I.R. requested the court apply the sibling relationship exception to adoption as to A.T.  If the court found the sibling relationship exception did not apply, their counsel asked that the court sign the

---

[2]  SSA reported Mother completed a parenting class as of December of 2020.

6

postadoptive contract agreement that she had prepared and that had been signed by the caretakers and her clients. Trial counsel for A.T. requested the court deny Mother's section 388 petition and requested the court not apply the parental-benefit relationship exception to adoption.

V. *Juvenile Court's Orders*

On October 12, 2021, the court denied Mother's section 388 request as to A.T. At the .26 hearing on the same day, the court determined A.T. was adoptable and that no exception to adoption applied. It terminated parental rights. The court signed an agreement for post-adoption contact between A.T. and his siblings.

DISCUSSION

Mother appeals from the juvenile court's orders denying her section 388 petition as well as terminating her parental rights pursuant to section .26. First, she contends the juvenile court abused its discretion by denying her request to allow an expert to observe visitation with A.T. Second, she argues the court abused its discretion by denying her section 388 petition. Finally, she claims the court erred by finding the parental benefit exception to adoption did not apply. We find no error and affirm the court's orders.

I. *Visitation Observation*

Mother claims the juvenile court violated her due process rights and abused its discretion by denying her request to have an expert observe a visit between A.T. and Mother to conduct a bonding study. We disagree.

As an initial matter, SSA asserts Mother failed to preserve this issue for appeal. The notice of appeal filed by Mother on November 18, 2021, indicated she only challenged the termination of parental rights. On these facts, and because both sides have fully briefed the underlying merits, we liberally construe the notice of appeal to include a

challenge to the concurrent denial of the section 388 petition. (*In re Madison W.* (2006) 141 Cal.App.4th 1447, 1450.)

Turning to the merits, a juvenile court has no statutory obligation to order a bonding study. (*In re Lorenzo C.* (1997) 54 Cal.App.4th 1330, 1339-1340 (*Lorenzo C.*).) "While it is not beyond the juvenile court's discretion to order a bonding study" after the termination of reunification services and "under compelling circumstances, the denial of a belated request for such a study is fully consistent with the scheme of the dependency statutes, and with due process." (*In re Richard C.* (1998) 68 Cal.App.4th 1191, 1197 (*Richard C.*).) "The applicable standard of review is whether, under all the evidence viewed in a light most favorable to the juvenile court's action, the juvenile court could have reasonably refrained from ordering a bonding study." (*Lorenzo C.*, *supra*, 54 Cal.App.4th at p. 1341.)

Mother fails to demonstrate the juvenile court abused its discretion by denying her belated request for an expert to observe visitation with A.T. for purposes of a bonding study. Mother sought a continuance of the .26 hearing just two days before the hearing was set, and after her reunification services were officially terminated. We recognize our Supreme Court suggests, "trial courts should seriously consider, where requested and appropriate, allowing for a bonding study or other relevant expert testimony" in helping to determine the importance of the parental relationship for the child. (*In re Caden C.* (2021) 11 Cal.5th 614, 633, fn. 4 (*Caden C.*).) Here, however, the request was made just days before the scheduled hearing and after her reunification services had been terminated. Furthermore, at the combined hearing various witnesses testified as to the quality of visitation and shared affection between Mother and A.T. On these facts, the court did not abuse its discretion by denying Mother's request.

"'Once reunification services are ordered terminated, the focus shifts to the needs of the child for permanency and stability. . . [Citations]." (*Richard C.*, *supra*,

8

68 Cal.App.4th at p. 1196.) Perhaps Mother's retained expert "may have enabled her to make a stronger case" at the combined .26 and section 388 hearing, she "was required to muster her evidence before the termination of reunification services." (*Ibid*.) "The Legislature did not contemplate such last-minute efforts to put off permanent placement." (*Id*. at p. 1197.) The court did not abuse its discretion by failing to order a single visit bonding study and accordingly, Mother was not denied due process.

II. *Section 388 Petition*

Mother asserts the juvenile court abused its discretion when it denied her section 388 petition. She contends she demonstrated a change in circumstance and that the requested modification of the order terminating reunification services would have served A.T.'s best interests. The court did not err.

"A juvenile court dependency order may be changed, modified, or set aside at any time." (*In re J.C.* (2014) 226 Cal.App.4th 503, 525 (*J.C.*).) "A parent may petition the court for such a modification on grounds of change of circumstance or new evidence. [Citation.] The parent, however, must also show that the proposed change would promote the best interests of the child." (*Ibid*.) "To support a section 388 petition, the change in circumstances must be substantial. [Citation.]" (*In re Ernesto R.* (2014) 230 Cal.App.4th 219, 223.) "Whether the juvenile court should modify a previously made order rests within its discretion, and its determination may not be disturbed unless there has been a clear abuse of discretion." (*J.C.*, *supra*, 226 Cal.App.4th at p. 525.)

The court granted Mother provisional services up until the combined hearing. During this time, she continued to abuse substances. While she appears to have stayed clean for a few months before the hearing, the record is replete with evidence demonstrating positive tests, missed tests, and even an attempt to defraud the court by having a friend try to test for her. The court synthesized the evidence this way: "Mother is working on her sobriety but she's struggling. Evidenced not only by her testimony but

9

by her actions. I have positive tests in July and August. I have the attempt to defraud the court by having someone else take those tests in July. I have no-shows in August and September despite Mother's willingness to get on the stand and admit all of that, which I appreciate and respect. We are not even close to a change in circumstances, and the court has to find that in order to even go any further to analyze whether or not it's in the children's best interest. I cannot get there in this case." On these facts, the court did not abuse its discretion by denying Mother's section 388 petition. We agree with the court A.T.'s best interests were served by permanency in a stable home.

III. *Parent-Benefit Exception*

Mother argues the juvenile court erred by failing to apply the parental-benefit exception to section .26. Not so.

Once reunification services have ended in a dependency case, a court is required to terminate parental rights unless an exception to adoption applies. (§ 366.26, subd. (c)(1).) The relevant exception is the parental-benefit exception to adoption. It is defined in section .26, subdivision (c)(1)(B)(i). Parental rights may not be terminated if a court finds a compelling reason that termination would be detrimental to the child. (§ 366.26, subd. (c)(1)(B)(i).)

The "three elements the parent must prove to establish the exception: (1) regular *visitation and contact*, and (2) a *relationship*, the continuation of which would benefit the child such that (3) the termination of parental rights would be *detrimental* to the child." (*In re Caden C*. (2021) 11 Cal.5th 614, 631 (*Caden C*.).) "By making this decision, the trial court determines whether terminating parental rights serves the child's best interests." (*Id*. at p. 632.) The parent bears the burden of proof on this statutory exception. (§ 366.26, subd. (c)(1)(B)(i).)

"The first element — regular visitation and contact — is straightforward. The question is just whether 'parents visit consistently,' taking into account 'the extent

10

permitted by court orders.' [Ctiation.]" (*Caden C.*, *supra*, 11 Cal.5th at p. 632.) "As to the second element, courts assess whether 'the child would benefit from continuing the relationship.'" (*Ibid.*) The second element involves numerous factors, such as the child's age, the portion of the child's life spent in the parent's custody, the positive or negative effect of interaction between parent and child, the child's specific needs, and how the child feels about and interacts with, looks to, or talks to the parent. (*Id.* at p. 633.) "Concerning the third element — whether 'termination would be detrimental to the child due to' the relationship — the court must decide whether it would be harmful to the child to sever the relationship and choose adoption. [Citations.]" (*Ibid.*)

We review the first two elements under a substantial evidence standard of review. (*Caden C.*, *supra*, 11 Cal.5th at p. 639.) "The third element — whether termination of parental rights would be detrimental to the child — is somewhat different." (*Id.* at p. 640.) "[T]he court must [] engage in a delicate balancing of [factual] determinations as part of assessing the likely course of a future situation that's inherently uncertain." (*Ibid.*) "The court makes the assessment by weighing the harm of losing the relationship against the benefits of placement in a new, adoptive home. And so, the ultimate decision — whether termination of parental rights would be detrimental to the child due to the child's relationship with his parent — is discretionary and properly reviewed for abuse of discretion." (*Ibid.*)

As to the first element, there is no dispute the court determined Mother maintained regular visitation and contact with A.T. As for the second prong, Mother argues the child's relationship with Mother was "substantial" and A.T. would benefit from continuing it. We have reviewed the record and do not discount Mother's affectionate relationship with A.T. and that she cared for his needs during visitations. The juvenile court also considered "all the testimony . . . about the visitation" and concluded that Mother did not carry her evidentiary burden to show the deep significance

11

of her relationship with the child.  At the time of the hearing, Mother continued to struggle with substance abuse and was only a few months clean.  While a "parent's continued struggles with the issues leading to dependency are not a categorical bar to applying the exception . . . the parent's struggles speak to the benefit (or lack thereof) of continuing the relationship and are relevant to that extent."  (*Caden C.*, *supra*, 11 Cal.5th at p. 637.)  Substantial evidence supported the court's determination as to the second element.

On the third and final element, whether termination of parental rights would be detrimental to A.T., the court did not abuse its discretion.  Mother introduced evidence demonstrating A.T. held a "significant, positive attachment" to her.  The court determined she did not show, however, the relationship was "substantial" to the extent it would be "detrimental" to the child should the relationship be terminated.  (*Caden C.*, *supra*, 11 Cal.5th 614 at p. 640.)  The court properly balanced the harm to A.T. from severing his relationship with Mother against the countervailing benefit of a new adoptive home and concluded the termination of parental rights was in A.T.'s best interests.  It opined:  "The stability of which he would receive in an adoptive home like the placement that he's been in for two years. I cannot find, based on this evidence, that . . . maintaining that relationship, continuing that relationship between [A.T.] and Mother would outweigh the benefit of a new adoptive home."  The court reviewed all of the evidence and engaged in the delicate balancing required under the third prong of the parental-benefit exception to adoption.  We find no error with the court's determination.

## DISPOSITION

The section 388 order and judgment are affirmed.


                                        O'LEARY, P. J.

WE CONCUR:


SANCHEZ, J.


MARKS, J.*

*Judge of the Orange County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.