Filed 11/15/22 In re M.R. CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----

| | |
|---|---|
| In re M.R. et al., Persons Coming Under the Juvenile Court Law. | C095365 |
| SAN JOAQUIN COUNTY HUMAN SERVICES AGENCY, | (Super. Ct. No. STKJDDP20200000125) |
| Plaintiff and Respondent, | |
| v. | |
| L.S., | |
| Defendant and Appellant. | |

Appellant L.S. (mother) is the mother of the minors, M.R. and P.R. (collectively the minors).  Mother contends that the juvenile court erred by (1) denying her request for a bonding study and (2) finding the beneficial parental relationship exception did not

1

apply to prevent the termination of parental rights. (Welf. & Inst. Code,[1] §§ 366.26, 395.) We affirm.

FACTUAL AND PROCEDURAL BACKGROUND

I

*Initial Dependency Proceedings*

On March 5, 2020, the Tuolumne County Department of Social Services (Tuolumne Department) filed a petition alleging that M.R. (then aged five years) and P.R. (then aged two years) came within the provision of section 300, subdivision (b)(1), failure to protect, and subdivision (g), no provision for support. The petition alleged that the minors were placed in protective custody due to their unsafe and unsanitary living conditions and mother's substance abuse, which endangered the minors' physical and emotional health and safety and created an unsafe home environment. The reporting party reported that the home was filthy and infested with rodents; mother was using drugs and another person overdosed in the home, but mother did not contact the police for two days; and the grandfather was granted guardianship of the minors, but was unable to retrieve them due to the weather conditions where he resided in Alaska. During an unannounced visit, social workers found that the family's living quarters had a rodent infestation, no running water, and hypodermic needle caps and burned spoons indicating drug use. Mother submitted to a drug test, which was positive for methamphetamine and opiates. M.R.'s teacher also reported that no one had seen P.R. in approximately one month and that M.R. was approximately one to three hours late for school every day.

On March 6, 2020, the minors were ordered detained in protective custody. The juvenile court subsequently took jurisdiction over the minors and, due to mother moving to San Joaquin County, set a hearing to transfer the dependency matter. At the April 30,

---

[1] Further undesignated statutory references are to the Welfare and Institutions Code.

2020 transfer-in hearing, the San Joaquin County Juvenile Court accepted the transfer of the case.

## II

### *Disposition*

The minors were previously removed from mother and the father, Ma.R. (father), by the Oregon Department of Human Services Agency (Oregon Department) in November 2016 due to substance abuse. The San Joaquin County Human Services Agency's (Agency) July 1, 2020, disposition report showed that both mother and father completed reunification case plans in the Oregon matter, reunified with the minors, and the dependency case was dismissed in December 2017. On May 18, 2020, the minors were placed with the paternal uncle and aunt, who were willing to adopt the minors if mother and father failed to reunify.

The Agency recommended bypassing mother for reunification services pursuant to section 361.5, subdivision (b)(13), due to her extensive history of drug use and resistance to prior court-ordered treatment for the problem during a three-year period prior to the filing of the current petition. The Agency also recommended bypassing father for reunification services.

At the August 26, 2020 contested dispositional hearing, the social worker testified that the recommendation to bypass reunification services to mother was based on her prior completion of substance abuse treatment and subsequent relapse, which demonstrated a resistance to treatment. The juvenile court continued the matter. At the continued hearing, the Agency indicated that if mother submitted to drug testing and tested negative, strong consideration would be given to providing her services. Mother tested negative for substances and father was positive for amphetamine and opiates. The Agency changed its recommendation to provide services to mother. The juvenile court ordered that mother receive reunification services and directed the Agency to amend her

case plan, and the court bypassed father for reunification services pursuant to section 361.5, subdivision (b)(13).

The Agency's November 23, 2020, supplemental disposition report showed that mother's reunification case plan consisted of compliance with court orders, substance abuse treatment, obtaining suitable housing, parenting education, and individual counseling.

III

*Status Review*

The Agency's April 7, 2021, status review report showed that mother reported she posted bail for father, who was arrested on drug charges and an outstanding warrant. The report also showed that on March 17, 2021, after completion of a residential drug treatment program, mother tested positive for opiates and methamphetamine. The report showed that mother readmitted herself to the residential drug treatment program in order to reinstate herself into drug court. Mother admitted she became involved with a man she met in an aftercare program and they began using drugs together. The Agency reported that, alternately, it was likely that mother continued to be involved with father because she was spending more time in the Sonora area and bailed him out of jail shortly before her relapse. The report showed that mother did not disclose her relapse, and she attempted to dilute her drug test results by drinking excessive amounts of water but ultimately returned a positive test. As a result, the Agency recommended terminating mother's reunification services with a permanent plan of adoption for the minors.

At the May 13, 2021 contested status review hearing, the juvenile court heard testimony from the social worker, who testified that mother's visits with the minors were not consistent when she was not engaged in a substance abuse program and had improved since being in the residential drug treatment program. The social worker testified that it was concerning that mother was not honest and forthcoming about her relapse. The social worker expressed the opinion that, based on the prior dependency case and

4

mother's lack of progress in the current dependency case, it did not appear likely that she would resolve the issues which resulted in the minors' removal or allow for them to safely return to her custody. The juvenile court found that the services provided to mother were reasonable, and the court did not believe that mother would be able to demonstrate a substantial probability that the minors could be returned to her care by September 2021 without a lifestyle change. The court ordered mother's reunification services terminated and set a hearing pursuant to section 366.26 for September 1, 2021, which was the date previously set for an additional status review hearing. The court then ordered that mother's visits with the minors continue, as long as mother remained in treatment and was clean and sober with negative drug tests.

IV

*Section 366.26 Hearing*

The Agency filed an August 13, 2021, section 366.26 report and an August 18, 2021, status review report in advance of the section 366.26 hearing. It was reported that one of the minors had no issues during a vacation with the caregivers but started having daily bathroom accidents when visits with mother resumed following the vacation. It was reported that mother's last visit with the minors occurred on July 20, 2021, and mother's drug counselor reported having no contact with mother since July 19, 2021. The counselor reported attempts to contact mother were unsuccessful and due to the lack of contact, the counselor sent a notice of action to mother on July 30, 2021, with a discharge date of August 9, 2021. It was also reported that the minors' caregivers remained committed to adopting the minors, who had been in their care since May 2020. The Agency's recommendation was termination of mother's and father's parental rights with a permanent plan of adoption for the minors.

Mother did not appear at the September 1, 2021, status review hearing. The Agency then informed the juvenile court that mother's visits would be reduced to once a month, as previously ordered by the court, because she recently tested positive for

5

Suboxone and methamphetamine. The court continued the section 366.26 hearing, adopted the proposed findings and orders from the Agency's status review report filed on August 18, 2021, and ordered mother's visits reduced.

On November 29, 2021, mother filed a request for a bonding study. Mother argued that she maintained visits, the minors were happy to see her and engaged with her during the visits, and she requested an expert to assess the bond between herself and the minors.

Mother did not appear at the December 7, 2021, contested section 366.26 hearing, and mother's counsel requested another continuance and that a bonding study be ordered. The juvenile court denied the request for a bonding study and proceeded in mother's absence. The court found notice was given as required by law and noted that reunification services had been denied as to father and terminated as to mother. The court found that there was clear and convincing evidence that it was likely the minors would be adopted, none of the exceptions pursuant to section 366.26, subdivision (c)(1) existed, termination of parental rights would not be detrimental to the minors, and it was in the best interest of the minors to terminate parental rights. The court then ordered mother's and father's parental rights terminated and freed the minors for adoption.

Mother filed a timely notice of appeal.

DISCUSSION

I

*Bonding Study*

Mother contends the juvenile court abused its discretion in denying her request for a bonding study because "[t]he juvenile court would have benefited from the expert's more thorough opinion as to how the children would be impacted by the termination of the relationship with their mother." We find no error.

The juvenile court's denial of mother's request for a bonding study was not an abuse of discretion. Under Evidence Code section 730, a court *may* appoint an expert to

6

study the bond between a parent and a child. (See *In re Jennifer J.* (1992) 8 Cal.App.4th 1080, 1084.) However, "[t]here is no requirement in statutory or case law that a court must secure a bonding study as a condition precedent to" terminating parental rights. (*In re Lorenzo C.* (1997) 54 Cal.App.4th 1330, 1339.) Thus, the juvenile court has broad discretion on whether to order a bonding assessment. (*Id.* at pp. 1339-1340; *In re Richard C.* (1998) 68 Cal.App.4th 1191, 1195.) On review, we must determine "whether, under all the evidence viewed in a light most favorable to the juvenile court's action, the juvenile court could have reasonably refrained from ordering a bonding study." (*Lorenzo C.*, at p. 1341.) We review the court's denial of a request for a bonding study for abuse of discretion. (*Ibid.*)

"The kind of parent-child bond the court may rely on to avoid termination of parental rights . . . does not arise in the short period between the termination of services and the section 366.26 hearing." (*In re Richard C.*, *supra*, 68 Cal.App.4th at p. 1196.) When the juvenile court evaluates the nature and quality of the parent-child bond, the child generally has been in the dependency process for a significant period of time, and the characteristics of the bond should be apparent. (*Ibid.*) Such is the case here.

In her request, mother asserted she maintained visitation with and had a "strong bond" with the minors, who were excited to see her and wished to go home with her. Without identifying any particular failings in the Agency's reports over the dependency period, mother concluded an expert was needed to assess the minors' bond with her to determine if termination of parental rights was in the minors' best interest. To the contrary, the nature of the bond was apparent from the reports and visitation logs over the 21 months the minors were in the dependency process. As noted by mother's counsel, the section 366.26 report included the social worker's conclusion that parental visits were positive and generally beneficial to the minors. The report included a detailed summary of the visits during the reporting period. Based on that record, the juvenile court was well aware of the nature of the bond between mother and the minors.

7

Additionally, mother provided absolutely no justification for waiting until one week before the section 366.26 hearing—over six months after her reunification services were terminated—to file her request for a bonding study. This is of concern because "[b]onding studies after the termination of reunification services" already "frequently require delays in permanency planning." (*In re Richard C.*, *supra*, 68 Cal.App.4th at p. 1197.) The reason for making the bonding study request was to assist in establishing the beneficial parental relationship exception to adoption. As we have noted, the kind of parent-child bond the juvenile court may rely on to avoid termination of parental rights based on that exception does not arise in the short period between the termination of services and the section 366.26 hearing. (*Richard C.*, at p. 1196.) Here, there was no valid reason for mother to have waited over six months to make her request, which would then necessarily require a last minute and substantial continuance of the section 366.26 hearing, particularly after that hearing had already been continued for three months. A juvenile court has broad discretion in deciding whether to grant a continuance. (*In re Gerald J.* (1991) 1 Cal.App.4th 1180, 1187.) However, in dependency cases, continuances are disfavored, shall be granted only upon a showing of good cause, and shall not be granted if to do so would be contrary to the minor's interests. (§ 352; *In re David H.* (2008) 165 Cal.App.4th 1626, 1635; *Gerald J.*, at p. 1187.) Mother has not shown that the juvenile court abused its discretion in denying her request for a bonding study. Absent a showing of clear abuse, the exercise of the court's discretion will not be overturned. (*In re Lorenzo C.*, *supra*, 54 Cal.App.4th at p. 1341.)

II

*Beneficial Relationship Exception*

As part of her argument that the juvenile court erred in denying her request for a bonding study, mother contends the juvenile court erred in failing to find the beneficial parental relationship exception to adoption applied based on her relationship with the minors. In doing so, mother implies, but does not clearly articulate in her argument, that

8

the court failed to engage in the proper analysis required by *In re Caden C.* (2021) 11 Cal.5th 614, 629 (*Caden C.*). We disagree.

" 'At the selection and implementation hearing held pursuant to section 366.26, a juvenile court must make one of four possible alternative permanent plans for a minor child. . . . The permanent plan preferred by the Legislature is adoption. [Citation.]' [Citation.] If the court finds the child is adoptable, it must terminate parental rights absent circumstances under which it would be detrimental to the child. [Citation.]" (*In re Ronell A.* (1996) 44 Cal.App.4th 1352, 1368, italics omitted.) There are limited circumstances permitting the court to find a "compelling reason for determining that termination [of parental rights] would be detrimental to the child." (§ 366.26, subd. (c)(1)(B).) Such circumstances include when "[t]he parents have maintained regular visitation and contact with the child[,] . . . the child would benefit from continuing the relationship," and termination of parental rights would be detrimental to the child. (§ 366.26, subd. (c)(1)(B)(i) [beneficial parental relationship exception]; see *Caden C.*, *supra*, 11 Cal.5th at pp. 639-640.)

To establish the beneficial parent-child relationship exception the parent must show by a preponderance of the evidence three elements: "(1) regular visitation and contact, and (2) a relationship, the continuation of which would benefit the child such that (3) the termination of parental rights would be detrimental to the child." (*Caden C.*, *supra*, 11 Cal.5th at p. 631, italics omitted; *id.* at p. 636.) "[I]n assessing whether termination would be detrimental, the [juvenile] court must decide whether the harm from severing the child's relationship with the parent outweighs the benefit to the child of placement in a new adoptive home." (*Id.* at p. 632, italics omitted.) "When the parent [meets this] burden, the parental-benefit exception applies such that it would not be in the best interest of the child to terminate parental rights, and the court should select a permanent plan other than adoption." (*Id.* at pp. 636-637.)

But the beneficial parental relationship exception to adoption is an *exception* to the general rule that the court must choose adoption where possible, and it " 'must be considered in view of the legislative preference for adoption when reunification efforts have failed.' " (*In re Celine R.* (2003) 31 Cal.4th 45, 53.) It "must be examined on a case-by-case basis, taking into account the many variables which affect a parent[-]child bond. The age of the child, the portion of the child's life spent in the parent's custody, the 'positive' or 'negative' effect of interaction between parent and child, and the child's particular needs are some of the variables which logically affect a parent[-]child bond." (*In re Autumn H.* (1994) 27 Cal.App.4th 567, 576.) The parent must show there is a significant, positive emotional attachment between the parent and child. (*In re Beatrice M.* (1994) 29 Cal.App.4th 1411, 1418-1419.) The parent must also prove that the parental relationship " 'promotes the well-being of the child to such a degree as to outweigh the well-being the child would gain in a permanent home with new, adoptive parents.' " (*In re S.B.* (2008) 164 Cal.App.4th 289, 297, quoting *Autumn H.*, at p. 575.) "In other words, the court balances the strength and quality of the natural parent[-]child relationship in a tenuous placement against the security and the sense of belonging a new family would confer. If severing the natural parent[-]child relationship would deprive the child of a substantial, positive emotional attachment such that the child would be greatly harmed, the preference for adoption is overcome and the natural parent's rights are not terminated." (*Autumn H.*, at p. 575.) On the other hand, when the benefits of a stable, adoptive, permanent home outweigh the harm the child would experience from the loss of a continued parent-child relationship, the court should order adoption. (*Caden C.*, *supra*, 11 Cal.5th at pp. 633-634; *Autumn H.*, at p. 575.)

The party claiming the exception has the burden of establishing the existence of any circumstances that constitute an exception to the termination of parental rights. (*In re C.F.* (2011) 193 Cal.App.4th 549, 553.) The factual predicate of the exception must be supported by substantial evidence, but the juvenile court exercises its discretion

in weighing that evidence and determining detriment. (*Caden C.*, *supra*, 11 Cal.5th at pp. 639-640; *In re K.P.* (2012) 203 Cal.App.4th 614, 622.)

Here, the juvenile court ruled: "It is in the minors' best interest to have parental rights terminated, and termination of parental rights is not detrimental to the minors. [¶] None of the exceptions pursuant to . . . section 366.26[, subdivision] (c)(1) exist[]." As such, it appears the court found mother's evidence of two of the required elements to establish the parental benefit exception was lacking. (See *Caden C.*, *supra*, 11 Cal.5th at pp. 631, 636.) Mother's failure to meet her burden was compounded by the fact that mother failed to appear at both the original date set for the section 366.26 hearing as well as the continued hearings. At the outset, we highlight that *Caden C.* was decided May 27, 2021, over six months prior to the juvenile court's section 366.26 ruling in this case. (*Caden C.*, at p. 614.) Accordingly, we presume, in the absence of any evidence to the contrary, that the court was aware of and complied with the law, including *Caden C.* (See, e.g., *People v. Jones* (2017) 3 Cal.5th 583, 616 [" 'In the absence of evidence to the contrary, we presume that the court "knows and applies the correct statutory and case law" ' "].)

To the extent mother claims the juvenile court failed to state on the record its reasonings and findings in denying the application of the beneficial parental relationship exception, the court is not required to make those findings on the record. (*In re A.L.* (2022) 73 Cal.App.5th 1131, 1156, 1161 [no requirement that the juvenile court make specific findings when it finds beneficial parental relationship exception does not apply].)

In any event, the fact that mother consistently visited the minors was undisputed. In fact, the Agency reported those visits generally went well. As for the second and third elements, mother did not meet her burden to establish either that the minors had "a substantial, positive, emotional attachment" to her, or that termination of that attachment would be detrimental to the minors (*Caden C.*, *supra*, 11 Cal.5th at p. 636) other than offering conclusory statements that there was a bond which should not be severed. On

11

the other hand, the Agency provided the juvenile court with sufficient evidence, including reports and visitation logs, for the court to determine the minors did not have the kind of relationship with mother that would trigger the beneficial parental relationship exception and foreclose termination of parental rights.

We conclude the juvenile court did not err in finding the beneficial parental relationship exception did not apply.

## DISPOSITION

The orders of the juvenile court are affirmed.


/s/_____,
Robie, Acting P. J.



We concur:


/s/_____,
Renner, J.



/s/_____,
Earl, J.


12