Filed 6/9/23 In re W.T. CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----

| | |
|---|---|
| In re W.T. et al., Persons Coming Under the Juvenile Court Law. | C096816 |
| SAN JOAQUIN COUNTY HUMAN SERVICES AGENCY,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>W.T. et al.,<br><br>Defendants and Appellants. | (Super. Ct. No. STKJDDP20200000340) |

Appellants R.H. (mother) and Wa.T. (father), the parents (collectively, parents) of the minors R.T. and W.T. (collectively, the minors), appeal from the juvenile court's order terminating their parental rights and ordering the minors to be placed for adoption. (Welf. & Inst. Code, §§ 366.26, 395).[1] Parents contend: (1) the juvenile court erred by

---

[1] Undesignated statutory references are to the Welfare and Institutions Code.

1

denying parents' request for a bonding study; and (2) the San Joaquin County Human Services Agency (Agency) and the juvenile court failed to comply with the inquiry requirements of the Indian Child Welfare Act (ICWA) (25 U.S.C. § 1901 et seq.), because the Agency did not contact extended family members to inquire about the ICWA and the juvenile court made no findings regarding agency compliance in that regard.

We will conditionally affirm subject to full compliance with the ICWA on remand, as described in this opinion.

FACTUAL AND PROCEDURAL BACKGROUND

I

*Initial Dependency Proceedings*

On September 23, 2020, the Agency filed a petition alleging that R.T. (then age four years) and W.T. (then age two years), came within the provision of section 300, subdivision (b)(1), failure to protect. The petition alleged mother was taken to a mental health care facility due to delusional and paranoid behavior, had untreated mental health issues, sometimes hit the minors, and frequently left them alone in the middle of the night. The petition further alleged that both parents had substance abuse issues, a history of domestic violence, and lacked stable housing.

At the initial detention hearing on September 24, 2020, parents stated that they did not have any Native American ancestry. The minors were detained, and father was named as the biological father of the minors. Parents completed Parental Notification of Indian Status form (ICWA-020) indicating that they had no known Native American ancestry, and the Agency filed an Indian Child Inquiry form (ICWA-010) reflecting that there was no reason to believe the minors were Indian children within the meaning of the ICWA.

## II

### *Jurisdiction and Disposition*

At the November 3, 2020, jurisdictional hearing, parents submitted on the Agency's reports and the petition was sustained.

The Agency's December 8, 2020, disposition report reported that there was no reason to believe the minors were Indian children under the ICWA based on parents' representations. The report showed that the minors were placed with a paternal cousin and had biweekly visits with each parent, separately. At the December 8, 2020, dispositional hearing, parents submitted on disposition and the juvenile court granted the Agency discretion to increase visits to include overnight and community visits.

## III

### *Status Review*

The Agency's June 1, 2021, status review report showed that the minors were visiting with parents regularly. The report showed that the minors were well-adjusted to their placement in their paternal relatives' home and that parents were making progress in their respective case plan objectives, and the Agency requested additional time for services. The proposed findings and orders prepared by the Agency included a recommendation that the juvenile court make a finding that the ICWA did not apply and that proper notice was given. At the subsequent status hearing, the juvenile court extended the time for reunification services and incorporated the Agency's recommendations from the status review report in its findings and orders.

The Agency's October 28, 2021, status review report showed that father was incarcerated, without bail, for sexual offenses involving the alleged rape of a minor over the age of 14. Father completed some services but had not visited with the minors since his incarceration. Mother completed residential substance abuse treatment and transitioned to an aftercare program, but she repeatedly failed to call or show up for drug court and was then terminated from the aftercare program for testing positive for alcohol

3

and drugs. The Agency reported it was unable to verify that mother was receiving and following through with her mental health treatment. The Agency recommended terminating parents' reunification services.

At the November 2, 2021, dependent review hearing, father's counsel opposed the Agency's recommendation and submitted, reporting that father had been sentenced to serve time in prison. The juvenile court terminated reunification services as to father, finding clear and convincing evidence that the return of the minors would create a substantial risk of detriment and there was not a substantial probability that the minors would be returned to father's physical custody. At the November 22, 2021, contested hearing, as to mother, the court heard testimony from mother and mother's drug court case manager about her ongoing substance abuse. The court found by clear and convincing evidence that the minors could not safely be returned to mother's care and ordered reunification services to mother terminated and set a selection and implementation hearing pursuant to section 366.26. However, the court advised it would set the hearing for March so that if she did make significant progress on the substance abuse issues, her counsel could file a request to change the court order and the court would consider it. The court ordered that visitation between mother and the minors continue. The court denied mother's request for a bonding study, reasoning that it was not an issue at that time.

IV

*Section 366.26 Hearing*

The Agency filed a February 23, 2022, section 366.26 report in advance of the section 366.26 hearing, reporting there was no reason to believe the minors were Indian children within the meaning of the ICWA and detailing the prior inquiries and the responses from parents. Mother missed five of her biweekly visits in November and December, visited the minors once on December 11, 2021, and did not attend any subsequent visits or contact the Agency or caretakers for visitation after that date. The

4

report showed father was incarcerated and did not have visits or other contact with the minors, since June 30, 2021. The report showed that the minors continued to thrive in the home of their caretakers, who were also committed to providing permanency to the minors through adoption. The report showed that the minors had a relationship with mother, but the benefit to the minors of having a stable, safe, and permanent home outweighed any detriment of loss that could arise for the minors. The Agency recommended terminating parents' parental rights and placing the minors for adoption.

On March 16, 2022, mother asked to have her visits with the minors reinstated. Mother's counsel explained that she stopped visits because she had relapsed from substance abuse but was attempting to get back into a treatment program. The Agency opposed, explaining that reinstating visitation after so many months would be confusing to the minors. The juvenile court declined mother's request to resume visits.

The Agency's April 21, 2022, status review report showed that the minors remained in the home of their caretakers, with whom they had developed a relationship with a healthy attachment and bond. The Agency recommended terminating parents' parental rights and freeing the minors for adoption.

At a June 1, 2022, visitation hearing, mother's counsel again requested to reinstate mother's visits with the minors, noting that mother entered substance abuse treatment in April 2022. The juvenile court allowed mother visits with the minors once a month. On July 7, 2022, the court directed the Agency to arrange one phone call between father and the minors. On July 11, 2022, the Agency filed a new ICWA-020 form signed by mother indicating possible Native American ancestry, but mother did not identify any tribe.

On July 29, 2022, mother's counsel filed a request for a bonding study. Counsel argued that the minors' caregivers reported that the minors were happy to see mother when she visited and that the minors even asked to go with mother at the end of a visit in December 2021. Counsel noted that the social worker asked R.T. if she wanted to live

5

with her caregivers forever and the minor stated, "no," because she missed mother. The minor made a similar statement about father.

At the August 16, 2022, contested section 366.26 hearing, the juvenile court first heard argument regarding mother's request for a bonding study. Mother's counsel argued that a bonding study would aid the court in determining whether the beneficial parental relationship exception provided under section 366.26, subdivision (c)(1) existed here. Counsel argued that mother maintained regular visitation. Counsel argued that the caregivers and the social worker observed a strong bond between mother and the minors. Counsel noted the two occasions wherein R.T. was asked if she wanted to live with the caregivers forever and the minor said no because she missed mother and father. Counsel argued that "without the bonding study, it may not be possible to ascertain further evidence on this issue through the minors' testimony or statements to the Agency." Father supported mother's request for a bonding study and asked to be included in the study. The minor's counsel also supported a bonding study arguing that it was probative for the court, based upon the minors' statements and their age.

The Agency argued that it was not in the minors' best interest to order a bonding study because it would create further delays in their permanency. The Agency argued that the strong bond may have existed when mother last visited the minors in December 2021, but mother stopped visiting and had no contact with the minors from December 2021 to June of 2022, and father had not visited the minors since his incarceration in June 2021. The Agency noted that one of the criteria for the beneficial parental relationship exception to apply is regular and consistent visitation, which mother could not show because she stopped visiting the minors for six months due to her struggles with substance abuse. The court denied the request for a bonding study.

During the hearing, the social worker testified that mother's current visits with the minors were generally positive in nature. The minors responded well to mother, mother was appropriate and played with the minors, and mother hugged and kissed the minors

6

and told them that she loves them. However, the social worker testified that the minors did not ask about mother when she was not visiting and R.T. was not sad or distraught when she said she wanted to live with mother. The social worker testified that, after restarting visits in June 2022, R.T. stated that she cried at night because she missed mother, and there were concerns that the resumption of visitation was confusing or destabilizing for R.T. Mother testified that she shared a close bond with the minors and that the visits with the minors were positive. Father testified that he shared a bond with both minors but conceded that the last time he saw the minors was in June 2021.

The juvenile court observed that there was substantial missed visitation time with the minors by both parents and reasoned that the first prong of the beneficial parental relationship exception was not met. The court stated that the lack of a major reaction from the minors when parents did not visit was indicative that it would not be detrimental to sever the relationship between parents and the minors. The court then found by clear and convincing evidence that it was likely the minors would be adopted, none of the exceptions pursuant to section 366.26, subdivision (c)(1) existed, termination of parental rights would not be detrimental to the minors, and that it was in the best interest of the minors to terminate parental rights and free the minors for adoption. The court ordered termination of parental rights and that the minors be placed for adoption. The parents appealed.

DISCUSSION

I

*Bonding Study*

Parents contend the juvenile court abused its discretion in denying mother's request for a bonding study because an expert opinion would be the best evidence in assessing the bond between the minors and their parents. We find no error.

Under Evidence Code section 730, a court *may* appoint an expert to study the bond between a parent and a child. (*In re Jennifer J.* (1992) 8 Cal.App.4th 1080, 1084.)

7

"There is no requirement in statutory or case law that a court must secure a bonding study as a condition precedent to" terminating parental rights. (*In re Lorenzo C.* (1997) 54 Cal.App.4th 1330, 1339.) The juvenile court has broad discretion on whether to order a bonding study. (*Id.* at pp. 1339-1340.) On review, we determine "whether, under all the evidence viewed in a light most favorable to the juvenile court's action, the juvenile court could have reasonably refrained from ordering a bonding study." (*Id.* at p. 1341.)

"The kind of parent-child bond the court may rely on to avoid termination of parental rights . . . does not arise in the short period between the termination of services and the section 366.26 hearing." (*In re Richard C.* (1998) 68 Cal.App.4th 1191, 1196.) Because the quality of the parent-child bond required to avoid termination of parental rights must necessarily have developed over time and have resulted in a continuing, positive emotional attachment which should be apparent at the time of the section 366.26 hearing, belated studies occurring just prior to the hearing may not be particularly useful in establishing an exception to termination of parental rights. (*Id.* at pp. 1196-1197.) Such is the case here. Without identifying any particular failings in the Agency's reports over the dependency period, mother argued an expert was needed just prior to the section 366.26 hearing to assess the minors' bond with her to determine if termination of parental rights was in the minors' best interest. To the contrary, the nature of the bond was apparent from the reports and visitation logs over the course of nearly two years while the minors were in the dependency process. The social worker's testimony and mother's testimony further evidenced a bond between the minors and mother. Based on this record, the juvenile court was well aware of the nature of the bond.

Here, mother waited until just over two weeks before the section 366.26 hearing—over eight months after her reunification services were terminated—to file her request for a bonding study. While mother did verbally request a bonding study, which the juvenile court denied, in November 2021, the request was not renewed for eight months. This is of concern because "bonding studies after the termination of reunification services"

already "frequently require delays in permanency planning." (*In re Richard C., supra*, 68 Cal.App.4th at p. 1197.) Mother's delay in renewing her request for a bonding study was due to her relapse in substance abuse and pursuit of treatment, but such a bonding study would have necessitated a last minute and substantial continuance of the section 366.26 hearing. Significantly, as the juvenile court reasoned, the bonding study would not have helped parents make their showing in support of the beneficial parental relationship exception because the primary issue was not the bond between the minors and parents but parents' lack of consistent visitation. (See *In re Caden C.* (2021) 11 Cal.5th 614, 636 [The parent "must show regular visitation and contact with the child, taking into account the extent of visitation permitted," for the exception to apply].)

While minors' counsel did initially support the request for a bonding study, counsel also agreed with county counsel that the case should proceed with a section 366.26 hearing and that the minors should be freed for adoption because the minors' need for permanency outweighed any beneficial relationship with the parents. Minors' counsel argued that parents failed in their case plans and the minors continued to thrive with their caretakers, despite the cessation of parents' visitation due to father's imprisonment and mother's relapse. After hearing argument, the court found that the regular visitation prong was not met and further observed: "I think it's indicative that we don't see a major reaction from the kids when the parents haven't visited. That is telling as to whether or not it's detrimental to sever the relationship between the parents and the child." Accordingly, a bonding study would not have helped parents overcome the lack of regular visitation, the juvenile court already had ample evidence in the record of the bond between parents and the minors, and a bonding study so late in the dependency proceedings would have resulted in substantial delays in permanency.

Parents have not shown that the juvenile court abused its discretion by not ordering a bonding study. Under all the evidence viewed in a light most favorable to the juvenile court's action, the juvenile court could have reasonably refrained from ordering

a bonding study. Absent a showing to the contrary, the juvenile court's exercise of discretion will not be overturned. (*In re Lorenzo C., supra*, 54 Cal.App.4th at p. 1341.)

II

*ICWA*

As a preliminary matter, parents contend the juvenile court failed to make ICWA findings, including finding the Agency satisfied its obligation to inquire. A juvenile court must make findings as to the applicability of ICWA and its failure to do so is an error. (*In re Jennifer A.* (2002) 103 Cal.App.4th 692, 704-705, 709.) Here, the juvenile court made no explicit findings as to the adequacy of the Agency's inquiry or whether the ICWA applied but did incorporate the proposed findings and orders prepared by the Agency, including a proposed finding that the ICWA did not apply. County counsel argues that this was an implicit finding that the ICWA did not apply. Regardless of whether this was an implicit finding, because mother subsequently filed a new ICWA-020 form indicating possible Native American ancestry, albeit without identifying any possible tribes, the juvenile court had a duty to conduct further appropriate inquiry and make a finding. (*In re A.M.* (2020) 47 Cal.App.5th 303, 319 ["ICWA and the corresponding provisions of California law impose an affirmative and continuing duty on the juvenile court to inquire whether the child is an Indian child."].) A juvenile court must make findings as to the applicability of ICWA and its failure to do so is error. (*In re Jennifer A.*, at pp. 704-705, 709.) Here, the juvenile court made no findings as to the adequacy of the Agency's inquiry or whether the ICWA applied after mother filed a secondary ICWA-020 form claiming Indian heritage. This was error. Further, we agree with parents' argument that the matter must be remanded because the Agency and the juvenile court failed to comply with their duty of inquiry under section 224.2, subdivision (b). As this court recently explained: "The ICWA protects the interests of Indian children and promotes the stability and security of Indian tribes by establishing minimum standards for removal of Indian children from their families, and by permitting tribal

10

participation in dependency proceedings. [Citations.] A major purpose of the ICWA is to protect "Indian children who are members of or are eligible for membership in an Indian tribe." [Citation.]' (*In re A.W.* (2019) 38 Cal.App.5th 655, 662.) The ICWA defines an ' "Indian child" ' as a child who 'is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe.' (25 U.S.C. § 1903(4).) The juvenile court and the social services department have an affirmative and continuing duty, beginning at initial contact, to inquire whether a child who is subject to the proceedings is, or may be, an Indian child. (Cal. Rules of Court, rule 5.481(a); § 224.2, subd. (a).)" (*In re G.A.* (2022) 81 Cal.App.5th 355, 360, review granted Oct. 12, 2022, S276056 (*G.A.*).)

"[S]ection 224.2 creates three distinct duties regarding ICWA in dependency proceedings. First, from the Agency's initial contact with a minor and his [or her] family, the statute imposes a duty of inquiry to ask all involved persons whether the child may be an Indian child. (§ 224.2, subds. (a), (b).) Second, if that initial inquiry creates a 'reason to *believe*' the child is an Indian child, then the Agency 'shall make *further inquiry* regarding the possible Indian status of the child, and shall make that inquiry as soon as practicable.' (*Id.*, subd. (e), italics added.) Third, if that further inquiry results in a reason to *know* the child is an Indian child, then the formal notice requirements of section 224.3 apply. (See § 224.2, subd. (c) [court is obligated to inquire at the first appearance whether anyone 'knows or has reason to know that the child is an Indian child']; *id.*, subd. (d) [defining circumstances that establish a 'reason to know' a child is an Indian child]; § 224.3 [ICWA notice is required if there is a 'reason to know' a child is an Indian child as defined under § 224.2, subd. (d)].)" (*In re D.S.* (2020) 46 Cal.App.5th 1041, 1052.) We review claims of inadequate inquiry into a child's Native American ancestry for substantial evidence. (*In re Rebecca R.* (2006) 143 Cal.App.4th 1426, 1430.)

Parents cite section 224.2, subdivision (b), which imposes a more extensive duty to inquire about Native American ancestry if a child is placed in the temporary custody of

11

a welfare department (§ 306) or probation department (§ 307): "Inquiry includes, but is not limited to, asking the child, parents, legal guardian, Indian custodian, extended family members, others who have an interest in the child, and the party reporting child abuse or neglect, whether the child is, or may be, an Indian child . . . ." (§ 224.2, subd. (b).)

The Agency does not dispute that it made no inquiry of any of the minors' extended family, despite frequent contact with some of those relatives. The Agency concedes its inquiry extended no further than parents but argues that any error is harmless because "the record contains [no] information suggesting a reason to believe that [the minors] may be an 'Indian child' within the meaning of the ICWA, such that the absence of further inquiry was prejudicial." (*In re Dezi C.* (2022) 79 Cal.App.5th 769, 779-782 (*Dezi C.*), review granted Sept. 21, 2022, S275578.) Recently, our Supreme Court granted review in *Dezi C.*, and we anticipate further clarification on this issue. Until such time, we conclude that given the Agency's concession and the remedial purpose underlying the ICWA and related California law intended to protect third party rights, we apply the analytical framework set forth by the California Supreme Court in *In re A.R.* for assessing harm and we conclude the error is prejudicial. (*In re A.R.* (2021) 11 Cal.5th 234, 252-254 [determining whether an error is prejudicial requires viewing the error through the lens of the remedial purpose of the law at issue].)

Due to changes in California law over the past few years, agencies now have a broader duty of inquiry and a duty of documentation (§ 224.2, subd. (b); Cal. Rules of Court, rule 5.481(a)(5)), and courts have been tasked with determining how to assess error when the agency fails to discharge its now-broad duty of inquiry. Agencies have often conceded error and, therefore, disposition of the issue on appeal has turned on whether the error was prejudicial. Although reviewing courts generally agree that reversal is dependent on showing prejudice, or a miscarriage of justice, approaches for assessing prejudice have varied. (See, e.g., *In re E.V.* (2022) 80 Cal.App.5th 691, 698; *Dezi C., supra*, 79 Cal.App.5th at p. 779, review granted; *In re J.C.* (2022)

12

77 Cal.App.5th 70, 80; *In re A.C.* (2021) 65 Cal.App.5th 1060, 1069; *In re Benjamin M.* (2021) 70 Cal.App.5th 735, 744.) In this court's prior decision addressing this issue, *G.A., supra*, 81 Cal.App.5th 355, review granted, parents both repeatedly denied Native American ancestry and the record showed the child welfare agency attempted to contact other family members, but they were not responsive. (*Id.* at pp. 359, 362.) The mother claimed that, in order to demonstrate prejudice, she only needed to show " 'there were sources of information readily available to respondent that were not consulted.' " (*Id.* at p. 362.) We rejected her contention and determined that the evidence derived from the initial inquiry " 'was sufficient for a reliable determination' " and the agency had no duty to inquire beyond that which it did. (*Id.* at p. 363.)

Here, in contrast to *G.A.*, there is no indication in the record that the Agency made any effort to inquire of *any* accessible relatives regarding the minors' ancestry. Instead, as the Agency concedes, it relied exclusively on parents' ICWA-20 forms to satisfy its duty of inquiry. Additionally, because the Agency was aware that mother spent much of her childhood in foster care, there were facts indicating that mother lacked complete information about her ancestry and thus, there was a heightened duty of inquiry under *Dezi C.*, 79 Cal.App.5th at p. 779. Because the record demonstrates that the Agency failed to discharge its inquiry duty and the juvenile court failed to expressly make an ICWA finding, we will conditionally affirm but remand for ICWA compliance.

## DISPOSITION

The orders terminating parental rights are conditionally affirmed for both parents subject only to full compliance with the ICWA as described in this opinion. If, on remand, the juvenile court determines the ICWA applies, the court shall vacate its previous orders terminating parental rights and conduct further proceedings consistent with the ICWA, including a new section 366.26 hearing. (25 U.S.C. § 1914; § 224, subd. (e).)


　　　　　　　　　　　　　　　　　　　　 /s/
　　　　　　　　　　　　　　　　　　　HORST, J.*


We concur:


　　 /s/
RENNER, Acting P. J.


　　 /s/
BOULWARE EURIE, J.

---

* Judge of the Placer County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.